776 So.2d 1019 (2001)
Deborah PALMER, etc., et al., Petitioner,
v.
FORTUNE INSURANCE COMPANY, Respondent.
No. 5D00-731.
District Court of Appeal of Florida, Fifth District.
January 19, 2001.
Brent C. Miller of Miller and Heil, P.A., Leesburg, for Petitioner.
Jerri A. Blair and Samuel E. Oliver of Jerri A. Blair, P.A., Tavares, for Respondent.
THOMPSON, C.J.
Petitioner, Deborah Palmer, seeks certiorari review of an order entered by the circuit court in its appellate capacity. At *1020 issue is whether Palmer is entitled to statutory interest and attorney fees in an insurance coverage dispute after the insurance company settled the case and admitted liability.
Palmer is the personal representative of the Estate of Corey Henne. Henne, who was Palmer's son, was killed in a motor vehicle accident on June 3, 1997. At the time of the accident, Henne was operating a motor vehicle owned by his girlfriend's father, Edwin Burch, who was insured through respondent, Fortune Insurance Company (hereinafter "Fortune"). Henne died after he lost control of the Burch vehicle, and three passengers in the vehicle were injured.
On September 2, 1997, Fortune received a letter from Palmer, accompanied by a Personal Injury Protection Application, the death certificate of Henne, and a copy of a bill from Lankford Funeral Home. The letter requested that Fortune forward payment of the $5,000 death benefit provided by Burch's PIP coverage. On September 8, 1997, Fortune received a letter from Palmer which was accompanied by a bill in the amount of $260.00 from Florida Regional Emergency Medical Services, for the ambulance service. Palmer's letter requested that Fortune pay 80% of this bill. Both the PIP application and the death certificate incorrectly indicated that Henne resided at Palmer's home, 465 King Charles Circle, Deland, Florida, at the time of the crash. The documents also did not make clear that the relationship between Henne and Burch would provide a basis for coverage. The ambulance service bill also incorrectly indicated that Henne resided at Palmer's address at the time of the accident. In fact, Henne did not live with his parents at the time of the accident, but rather lived with a friend.
The injured passengers in the Burch vehicle filed PIP claims before Palmer submitted the PIP application on behalf of the estate. As early as July 3, 1997, Fortune requested a police report from Palmer's attorney, who was also representing the injured passengers. On July 28, 1997, Fortune sent another letter to Palmer's attorney indicating that it had not yet received the police report. On October 10, 1997, Fortune spoke with Palmer's attorney about the various claims which had arisen out of the accident, and explained that Fortune had still not received a police report. On October 13, 1997, Fortune wrote to Palmer's attorney and requested information about Henne.
The police report was finally received by Fortune from Palmer's attorney on October 17, 1997, and it too indicated that Henne resided at Palmer's residence. Fortune learned from the police report that Henne was driving the Burch vehicle at the time of the accident. At that point Fortune ran a driver/motor vehicle search on Palmer's household at 465 King Charles Circle. The search indicated that Palmer's husband, William Palmer, who also resided at 465 King Charles Circle, owned a vehicle that was insured by State Farm. Fortune then contacted Palmer's attorney and stated that William Palmer's policy would provide PIP coverage to Henne. See generally § 627.736(4)(d)3., Fla.Stat. (1999) (insurer of motor vehicle owner shall pay PIP benefits for injury sustained by any relative of the owner residing in the same household, provided the relative is not himself the owner of a motor vehicle). At that point Palmer's attorney told Fortune that Henne did not live at Palmer's address at the time of the accident.
On November 6, 1997, Palmer filed a complaint against Fortune to recover on the PIP insurance policy issued to Burch. On November 24, 1997 Palmer's attorney spoke with Fortune and provided the names of individuals who could confirm that Henne did not reside with the Palmers. Fortune's adjuster made several telephone calls attempting to locate those individuals. Fortune then prepared an affidavit for Palmer's signature stating that Henne did not reside at her address at the time of the accident. Fortune sent the affidavit, with a letter to Palmer's counsel *1021 on December 3, 1997. On December 29, 1997 Fortune received the executed affidavit from Palmer, and immediately paid her claim. See generally § 627.736(4)(d)4., Fla.Stat. (1999) (insurer of motor vehicle owner shall pay PIP benefits for injury sustained by any other person occupying the vehicle, provided the injured person is not the owner of an insured vehicle or entitled to PIP benefits from the insurer of an owner of another motor vehicle for which PIP coverage is required).
After Fortune paid the PIP claim, Palmer moved for summary judgment on the remaining issue of her entitlement to statutory interest and attorney fees. The county court entered an order denying the motion for summary judgment, and on May 27, 1999, entered final judgment against Palmer. Palmer then appealed the final judgment, and the circuit court in a 2-1 decision affirmed the judgment by opinion which issued February 10, 2000.
Pursuant to section 627.736(4)(b), Florida Statutes (1999):
Personal injury protection benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same.
See also § 627.736(4)(c), Fla.Stat. (1999) (overdue payments shall bear interest at rate of 10% per year). Under section 627.428(1), Florida Statutes (1999), upon rendition of a judgment against an insurer and in favor of an insured or beneficiary under a policy, the court shall determine a reasonable sum as attorney fees. See also § 627.736(8), Fla.Stat. (1999)(attorney fee provision of section 627.428 shall apply to no-fault disputes).
In Wollard v. Lloyd's and Companies of Lloyd's, 439 So.2d 217 (Fla.1983), the supreme court held that where an insurer has agreed to settle a disputed case, it has declined to defend its position in the pending suit and the payment of the claim is the functional equivalent of a confession of judgment in favor of the insured, and therefore the settlement between the insured and insurer provides the basis for an award of attorney fees to the insured. Palmer asserts that Fortune did not pay the PIP claim within 30 days of receiving the PIP application, thereby necessitating the lawsuit, and Fortune settled the suit by paying the submitted bills. Palmer therefore claims that the estate is entitled to statutory interest and attorney fees. We agree.
Martinez v. Fortune Insurance Co., 684 So.2d 201 (Fla. 4th DCA 1996) is instructive. There, an insured brought suit against an insurer for PIP benefits for failure to pay a wage loss claim within 30 days of receipt of claim. In that case, the county court certified as a question of great public importance whether a PIP insurer was required to pay claimed benefits within 30 days of receipt of the claim rather than within 30 days of receipt of medical verification of the claim. In that case, the insurer argued that it was not able to pay the claim within 30 days of receipt of the claim, because the insured's doctor did not timely provide a disability report. The court answered the certified question in the affirmative, holding that the no-fault statute required the PIP insurer to pay the claimed benefits within 30 days of receiving the written notice of claim, rather than within 30 days of receiving medical verification of the claim. See also Crooks v. State Farm Mut. Auto. Ins. Co., 659 So.2d 1266 (Fla. 3d DCA 1995) (burden to verify claim within 30 days is on insurer, and insurer could not excuse its noncompliance with this statutory requirement based on insured's failure to submit claim on approved in-house claims form); see also Dunmore v. Interstate Fire Ins. Company, 301 So.2d 502 (Fla. 1st DCA 1974).[1] In the instant case, the insurer *1022 failed to verify Palmer's claim within 30 days, and delayed payment on the claim until it received proof of coverage. The burden is on the insurer to authenticate a claim within the 30 day period. See Martinez; Crooks. In the instant case, Fortune attempts to shift the burden to Palmer, by stating that there was incorrect information in her documents, and that her attorney dragged his heels in furnishing a police report. However, the legislature placed the burden on the insurer to verify a claim within the 30 day period because the no-fault statute was designed to provide a speedy recovery of PIP benefits. As the court stated in Dunmore, there is no tolling provision of the 30 day period for payment of PIP claims. Fortune should have either paid the reasonable value of the submitted claims or denied coverage before the 30 day period expired. See Peachtree Cas. Ins. Co. v. Walden, 759 So.2d 7, 8 (Fla. 5th DCA 2000) (insurers have 30 days to provide benefits unless they themselves announce that they will pay no benefits). Fortune did neither, it simply continued its investigation. The statute does not provide for this type of delay. During the 30 day period there was no record activity showing that Fortune made an attempt to contact Palmer or any of the passengers in the Burch vehicle to confirm the address of the deceased or confirm his involvement in the accident. There was no record showing that Fortune made any independent attempts to directly obtain the police report from the source, rather than from Palmer's attorney. Although Fortune emphasizes that it was provided an incorrect address for the decedent, it did not ascertain the existence of the alternative policy held by William Palmer until after it received the police report on October 17, 1997. Therefore, Fortune did not discover a basis for denying Palmer's claim until after the 30 day period had expired.
As Fortune did not either reject or pay the claim within 30 days, it was necessary for Palmer to file suit. Although incomplete and erroneous information makes verification of a claim more difficult, the statutory burden remains with the insurer to make a decision on coverage within 30 days. Of course, if the opposing party or attorney provided erroneous or incomplete information that hindered the insurer's investigation, that could affect the reasonable value of the attorney's fee as determined by the court. Cf. Wollard.
The circuit court sitting in its appellate capacity departed from the essential requirements of law by not following the applicable statute and case law. See Ivey *1023 v. Allstate Ins. Co., 774 So.2d 679 (Fla. 2000). We accordingly grant the petition for writ of certiorari and quash the circuit court's opinion.
PETITION GRANTED; OPINION QUASHED.
SHARP, W., and SAWAYA, JJ., concur.
NOTES
[1] Fortune argues that it paid Palmer's PIP claim within a reasonable time, and any delay was caused by the opposing party. Fortune states that the erroneous and incomplete information in the PIP application did not give it "written notice of the fact of a covered loss." See § 627.736(4), Fla.Stat. In a case cited by Fortune, Allstate Insurance Co. v. Ivey, 728 So.2d 282 (Fla. 3d DCA 1999), quashed, 774 So.2d 679 (Fla.2000), an insured brought an action against an insurer to recover attorney fees for an untimely payment of full PIP benefits. The county court denied the demand for attorney fees, and on appeal the circuit court reversed. On certiorari review, the Third District Court of Appeal quashed the circuit court decision, holding that where the insurer during the 30 day period made an incomplete payment on a medical bill because of an ambiguity in the bill itself, and made full payment within 30 days once the bill was corrected by the doctor at deposition, the insured would not be entitled to attorney fees. Unlike the situation in Ivey, the insurer in this case did not make a partial payment within the 30 day time period for paying a PIP claim, but instead did nothing. Thus, we find Ivey to be distinguishable. Moreover, the supreme court recently quashed the Ivey decision, finding that certiorari review was inappropriate in the district court of appeal and should not have been granted. The circuit court had correctly ruled that the insured was entitled to attorney's fees, because the insurer made no investigation before making the partial PIP payment. The supreme court found that the district court of appeal improvidently granted certiorari review and relief because it was simply dissatisfied with the result of the circuit court decision, and further, its own holding was contrary to well-established principles of PIP law. See Ivey v. Allstate Insurance Co., 774 So.2d 679 (Fla.2000). In the instant case, certiorari review is appropriate because the circuit court's decision departed from the essential requirements of law, resulting in a miscarriage of justice.