969 So.2d 393 (2007)
STATE FARM FLORIDA INSURANCE COMPANY, Petitioner,
v.
Jessica LORENZO f/k/a Jessica Dibble, et al., Respondent.
No. 5D06-3147.
District Court of Appeal of Florida, Fifth District.
July 27, 2007.
*395 Elizabeth K. Russo and Jonathan L. Gaines, of Russo Appellate Firm, P.A., Miami, and Butler, Pappas, Weihmuller, Katz, Craig, LLP, Tampa, for Petitioner.
Douglas L. Grose of Douglas L. Grose, P.A., Tampa, for Respondent.
THOMPSON, J.
State Farm Florida Insurance Co. ("State Farm") seeks certiorari review of a circuit court appellate decision affirming summary judgment for Jessica and Steven Lorenzo. Because the circuit court's order constitutes a departure from the essential requirements of the law, we grant certiorari relief.
A fire occurred at the Lorenzos' house, which was covered by a State Farm homeowner's insurance policy, on 10 October 2000. Their policy's loss settlement provision provided:
Loss Settlement. Covered property losses are settled as follows:
* * *
c. [State Farm] will pay the cost to repair or replace buildings . . . subject to the following:
(1) until actual repair or replacement is completed, we will pay the actual cash value of the damage to the buildings, up to the policy limit, not to exceed the replacement cost of the damaged part of the buildings for equivalent construction and use on the same premises;
(2) You must make a claim within 180 days after the loss for any additional payment on a replacement cost basis.
Any additional payment is limited to the amount you actually and necessarily spend to repair or replace the damaged buildings with equivalent construction and for equivalent use on the same premises.
On 11 October 2000, the Lorenzos entered into a contract with public adjuster Mark Boardman in which Boardman would receive ten percent of the Lorenzos' recovery under the policy. That day, the Lorenzos and Boardman met with a State Farm claim specialist ("specialist"). The specialist gave the Lorenzos a $5,000 check as initial payment on their additional living expense coverage and made arrangements to inspect and assess the fire damage.
On 26 October 2000, the specialist sent Boardman State Farm's repair estimate. The estimate stated the loss's actual cash value was $78,799.51, and the replacement cost, if repairs were performed, was $84,787.89. Accordingly, State Farm enclosed a check for $78,799.51 and informed the Lorenzos:
You may use any contractor you choose and have him contact us should he have any questions. Any differences between our estimate and your contractor's estimate should be resolved prior to the work being started.
On 30 October 2000, Boardman provided State Farm a repair estimate from his general contracting company, Genesis Design and Construction ("Genesis"), which explained some differences between Genesis' and State Farm's estimates. As a result, State Farm adjusted its estimate to reflect an actual cash value of $93,167.82 and replacement cost of $99,514.11. Accordingly, *396 it issued an additional check for $14,368.31 and explained that the actual case value was paid under the loss settlement provision. At this point, State Farm had paid $93,167.82. The remaining amount for replacement cost  $6,346.29  was to be paid when the repairs were completed or when the Lorenzos presented a signed contract with a general contractor.
State Farm attempted to contact Boardman eight times in December 2000 and January 2001 to determine whether the Lorenzos had retained a general contractor. Their inquiries were unsuccessful, though Boardman possessed their signed contract with a general contractor; on 10 December 2000, the Lorenzos had entered into a repair contract with Genesis.[1] Instead, the Lorenzos filed a complaint on 12 January 2001, asserting a class action based on State Farm's policy of requiring work to be performed before paying replacement cost. Rather than disclosing the repair contract, the Lorenzos mailed a letter and a copy of the first complaint to State Farm on 26 January 2001. After State Farm learned that Genesis acquired construction permits to repair the Lorenzos' house  and after the Lorenzos' suit was filed  State Farm issued a $6,346.29 check for replacement cost.
The Lorenzos' action was transferred to county court after their class action claims were dismissed. Their fourth amended complaint alleged State Farm breached its insurance contract by excluding depreciation and contractors' overhead and profit from its initial actual cash value payments. It also alleged that State Farm's withholding of payment for contractor overhead and profit required Lorenzo to retain counsel.
The county court granted summary judgment for the Lorenzos, holding that, "when [State Farm] paid the claim herein subsequent to the Plaintiffs filing their suit, said payment constituted a confession of judgment." The court awarded them $278.30 for prejudgment interest on State Farm's fourth payment and reserved jurisdiction for attorney's fees and costs. The circuit court affirmed:
[State Farm] allegedly withheld from the amounts paid to the Lorenzos the amounts representing compensation for depreciation and for the contractor's overhead and profit. State Farm allegedly conditioned payment of these amounts on their compliance with certain conditions not set forth in the insurance contract. The Lorenzos contend that the imposition of the additional conditions is fraudulent . . . and a breach of the insurance contract. . . .
* * *
. . . State Farm effected a confession of judgment by its payment of the $6346.29. The conduct of State Farm prior to commencement of the lawsuit reasonably led Plaintiffs to believe that they would not be paid for this amount. Indeed, it was only after the suit had been filed that State Farm provided this payment. "When the insurance company has agreed to settle a disputed case, it has, in effect, declined to defend its position in the pending suit."
(Citations omitted.)

STANDARD OF REVIEW
Second-tier certiorari review is appropriate only where the circuit court does not afford procedural due process or departs from the essential requirements of *397 law. Progressive Express Ins. Co. v. Schultz, 948 So.2d 1027, 1029 (Fla. 5th DCA 2007) (citing Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995)). A departure from the essential requirements of law is more than mere legal error; courts should grant certiorari review only when a violation of a clearly established principle of law results in a miscarriage of justice. Id. (citing Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla. 2003)). "A `clearly established principle of law' can derive from a number of legal sources, including the constitution, statutes, rules of court and controlling case law." Id. (citing Progressive Express Ins. Co. v. Physician's Injury Care Ctr., Inc., 906 So.2d 1125, 1126-27 (Fla. 5th DCA 2005)). "A failure to observe the essential requirements of law has been held synonymous with a failure to apply the correct law." Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic, 913 So.2d 1281, 1284 (Fla. 2d DCA 2005); accord Progressive Express Ins. Co. v. Devitis, 924 So.2d 878, 879 (Fla. 4th DCA 2006).

DISCUSSION
We hold that the confession of judgment doctrine is inapplicable here. Section 627.428, Florida Statutes, addresses the award of attorney's fees to insureds who prevail in litigation with their insurers over policy benefits.[2] Its purpose is to discourage insurers from contesting valid claims and to reimburse successful insureds for attorney's fees when they must sue to enforce their insurance contracts. Schultz, 948 So.2d at 1029-30 (citing Ins. Co. of N. Am. v. Lexow, 602 So.2d 528, 531 (Fla.1992)). In Wollard v. Lloyd's & Cos. of Lloyd's, 439 So.2d 217 (Fla.1983), the Florida Supreme Court deemed an insurer's pre-trial settlement with the insured to be a "confession of judgment" for purposes of section 627.428:
When the insurance company has agreed to settle a disputed case, it has . . . declined to defend its position in the pending suit. Thus, the payment of the claim is . . . the functional equivalent of a confession of judgment. . . . Requiring the plaintiff to continue litigation in spite of an acceptable offer of settlement merely to avoid having to offset attorney's fees against compensation for the loss puts an unnecessary burden on the judicial system, fails to protect any interest . . . [,] and discourages any attempt at settlement. This literal requirement of the statute exalts form over substance to the detriment of public policy, and such a result is clearly absurd.
Wollard, 439 So.2d at 218-19.
The confession of judgment doctrine turns on the policy underlying section 627.428: discouraging insurers from contesting valid claims and reimbursing insureds for attorney's fees when they must sue to receive the benefits owed to them. Pepper's Steel & Alloys, Inc. v. United States, 850 So.2d 462, 465 (Fla.2003). This doctrine applies where the insurer has denied benefits the insured was entitled to, forcing the insured to file suit, resulting in the insurer's change of heart and payment before judgment. See, e.g., Ivey v. Allstate Ins. Co., 774 So.2d 679, 684 (Fla.2000); Palmer v. Fortune Ins. Co., 776 So.2d 1019, 1021 (Fla. 5th DCA 2001); United *398 States Security Ins. Co. v. LaPour, 617 So.2d 347, 348 (Fla. 3d DCA 1993). However, courts generally do not apply the doctrine where the insureds were not forced to sue to receive benefits; applying the doctrine would encourage unnecessary litigation by rewarding a race to the court-house for attorney's fees even where the insurer was complying with its obligations under the policy. Basik Exports & Imports, Inc. v. Preferred Nat'l Ins. Co., 911 So.2d 291, 293 (Fla. 4th DCA 2005). The reasoning in Tristar Lodging, Inc. v. Arch Speciality Insurance Co., 434 F.Supp.2d 1286, 1297-98 (M.D.Fla.2006) (citations and footnote omitted), is persuasive here:
Plaintiff . . . cite[s] [cases applying the confession of judgment doctrine] for the proposition that the Court [must] . . . award fees whenever a Plaintiff sues an insurer and money is later paid. The Court declines to read the statute so broadly. . . . If Plaintiff were correct, then it would behoove every policyholder to sue whenever a claim is contemplated, because, . . . whether the claim is eventually adjusted downward or paid in full, attorney's fees would automatically result. This . . . would be contrary to the stated purpose of the statute: discouraging lawsuits and encouraging timely payments of claims. If the insurer knows it will eventually have to pay attorney's fees regardless, it loses the incentive to pay the claim timely, and this would raise the likelihood that the claim will be contested. Moreover, there is a fundamental due process concern in finding that an insurance company which appropriately pays a valid claim according to the Policy terms must still pay attorney's fees, because a claimant sued it to do what it was already in the process of doing. . . . [T]his statute . . . ha[s] consistently been interpreted to authorize recovery of attorney's fees from an insurer only when the insurer has wrongfully withheld payment of the proceeds of the policy.
For similar reasons, the Court rejects Plaintiff's argument that payments made pursuant to the provisions of the Policy are somehow converted into a confession of judgment if done after suit is prematurely filed. The filing of a lawsuit does not extinguish the insurer's obligations under the Policy to adjust and pay the claim. While Florida law does hold that payments are treated as confessions of judgment where an insurer first disputes the claim and then settles, the existence of a bona fide dispute and not the mere possibility of a dispute, is a crucial condition precedent to such a holding. Here, as noted above, there has been no such breach shown.
State Farm promptly paid $93,167.82, the benefits to which the Lorenzos were entitled under the policy. The Lorenzos through their public adjuster concealed the fact they had already performed the act necessary under the policy terms to entitle her to the $6,346.29 final payment for replacement costs. State Farm was abiding by its obligations under the loss settlement provision, and did not withhold benefits or compel the Lorenzos to sue. The circuit court applied the incorrect law by relying on the confession of judgment doctrine.
We conclude that the circuit court's error resulted in a miscarriage of justice. The order awards attorney's fees to the Lorenzos for bringing a premature suit against State Farm, which was complying with its policy obligations, confounding the role of the attorney's fee in facilitating the economical, efficient, and expeditious administration of justice. See Schultz, 948 So.2d at 1031 (Fla. 5th DCA 2007) (citing Miller v. First Am. Bank & Trust, 607 So.2d 483, 485 n. 4 (Fla. 4th DCA 1992)). Moreover, we note the error could have a pervasive, widespread effect in other proceedings. *399 See McGrath Cmty. Chiropractic, 913 So.2d at 1286. Here, as Tristar Lodging explains, applying the confession of judgment doctrine undermines the statute's purpose by simultaneously rewarding unnecessary litigation and discouraging insurers' prompt compliance with their obligations.
Accordingly, we GRANT the Writ of Certiorari and QUASH the circuit court's orders affirming summary judgment and deeming the Lorenzos to be the prevailing party for purposes of appellate attorney's fees.
PETITION GRANTED.
PALMER, C.J., and MONACO J., concur.
NOTES
[1] Thus, Boardman acted as the Lorenzos' adjuster for a percentage of their recovery, and his company functioned as their general contractor for another percentage. This arrangement is now prohibited by section 26.8795, Florida Statutes (2006).
[2] The subsection provides:

Upon the rendition of a judgment or decree . . . against an insurer and in favor of any named or omnibus insured . . ., the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.