**OMEGA INSURANCE COMPANY,**
**Appellant,**

v.

**Kathy JOHNSON, Appellee.**

**No. 5D13–1701.**

District Court of Appeal of Florida,
Fifth District.

Sept. 5, 2014.

Anthony J. Russo, Ezequiel Lugo, Jared M. Krukar, and Carol M. Rooney, of Butler, Pappas, Weihmuller, Katz, Craig, LLP, Tampa, for Appellant.

Timothy W. Weber, of Weber, Crabb & Wein, P.A., St. Petersburg, for Appellee.

SAWAYA, J.

Omega Insurance Company seeks review of an order awarding attorneys' fees pursuant to section 627.428, Florida Statutes (2009), based on application of the confession of judgment doctrine. Specifically, we must determine whether Omega wrongfully withheld policy benefits to its insured, Kathy Johnson, after she filed a claim for sinkhole damage under the policy Omega issued to her, thereby forcing her to file suit to collect her policy benefits. If that is what Omega did, then the order under review should be affirmed. If it did not, reversal of the order is required.

The policy Omega issued to Johnson is a homeowner's policy that contains a provision for sinkhole damage coverage.[1] Since it is undisputed that such

---

1. The policy was issued on April 26, 2009. This date is significant because " 'the statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract.' " *Menendez v. Progressive Express Ins. Co., Inc.*, 35 So.3d

coverage is provided under the policy, it is not necessary to burden this opinion with quotation of the specific provision. When Johnson noticed structural damage to her home, she filed a claim for policy benefits with Omega, contending that the damage was caused by sinkhole activity on the property. Receipt of this claim prompted Omega to investigate pursuant to a compilation of statutory provisions that requires insurers to meet certain standards in the investigation and handling of sinkhole claims. The statutes also make provision for a neutral evaluation procedure that offers an alternative to litigation. These provisions, found in chapter 627, are "designed to provide a framework for insurance companies to follow when encountering ... claims involving sinkhole damage." *Universal Ins. Co. of N. Am. v. Warfel*, 82 So.3d 47, 57 (Fla.2012) (*"Warfel II"*). It will be helpful to summarize these statutory provisions before proceeding further.

■ The standards for investigating a sinkhole claim are found in section 627.707, Florida Statutes (2009). They require the insurer to inspect the property for structural damage that may be the result of sinkhole activity. § 627.707(1), Fla. Stat. (2009). If structural damage is confirmed but the insurer is unable to identify a valid cause of the damage, or discovers the damage is consistent with sinkhole loss, or the policyholder demands testing, the insurer shall engage a professional engineer or geologist to conduct testing and render a report regarding the cause of the damage. *Id.* § 627.707(2). The report shall be in compliance with the requirements of section 627.7073, Florida Statutes, and shall be issued to the insurer and the insured. *Id.* § 627.7073(1). The findings, opinions, and recommendations contained in the re-port "shall be presumed correct." *Id.* § 627.7073(1)(c). If a report is issued pursuant to section 627.7073, an alternative procedure for resolution of disputed sinkhole claims is available. *Id.* § 627.7074. This procedure provides for "neutral evaluation" of the claim to be conducted "as an informal process in which formal rules of evidence and procedure need not be observed." *Id.* § 627.7074(5). A request for neutral evaluation is made with the Department of Financial Services. *Id.* § 627.7074(4); *State Farm Fla. Ins. Co. v. Colella*, 95 So.3d 891 (Fla. 2d DCA), *review denied*, 108 So.3d 654 (Fla.2012). "Neutral evaluation is nonbinding, but mandatory if requested by either party." *Id.* § 627.7074(4). Thus, once the request for neutral evaluation has been filed, participation in that process is "mandatory and guaranteed." *Citizens Prop. Ins. Corp. v. Trapeo*, 136 So.3d 670, 677 (Fla. 2d DCA 2014).

When Omega received Johnson's claim, it commissioned a professional engineering and geology firm to conduct testing and issue a report pursuant to section 627.707. The report concluded that sinkhole activity was not a cause of the damage to Johnson's property. Based on this report, Omega sent correspondence to Johnson stating that, in light of the findings in the report, sinkhole activity was eliminated as the cause of damage to her home and it was not able to honor her claim. Omega attached a copy of the report to the correspondence. The correspondence contained the required disclosure of Johnson's right to participate in the neutral evaluation program under section 627.7074(3) and notified Johnson that Omega was statutorily obligated to bear the expense associated with the neutral evaluation. The letter

873, 876 (Fla.2010) (quoting *Hassen v. State Farm Mut. Auto. Ins. Co.*, 674 So.2d 106, 108 (Fla.1996)).

also advised Johnson to contact the claims adjuster at a specific telephone number if she had any questions regarding the claim or the content of the letter.

Johnson never responded to Omega's letter. Instead, Johnson sought her own independent opinion and commissioned a civil engineering firm to evaluate the cause of damage to her home. The report issued by Johnson's engineering firm disagreed with Omega's report and stated that "sinkhole activity is a cause of structural distress at the Johnson residence within a reasonable, professional probability."

With this report in hand, Johnson filed the underlying lawsuit (almost a year after Omega sent the denial letter), alleging that Omega breached Johnson's homeowner's insurance policy by failing to pay the benefits due Johnson. Neither the report listing sinkhole activity as a cause of damage nor the findings contained therein were relayed to Omega prior to the institution of the lawsuit. Omega obtained a copy of the report for the first time during the course of discovery.

Omega filed a motion for neutral evaluation and to stay litigation pursuant to section 627.7074. The trial court stayed the litigation, and Omega filed a request for neutral evaluation of a sinkhole insurance claim with Florida's Department of Financial Services. A neutral evaluator was appointed, and he visited Johnson's home. Thereafter, he issued a report concurring with the result of the report issued by Johnson's engineering firm. Specifically, the neutral evaluator found that there was a sinkhole loss that required remediation.

Upon receipt of the report, Omega wrote to inform Johnson that it intended to comply with the neutral evaluator's rec-

ommendations and pay the claim. Omega tendered the policy benefits, and Johnson filed a Motion for Confession of Judgment and Motion for Attorneys' Fees, Costs and Interest. The motion for fees alleged entitlement pursuant to section 627.428, which provides that "[u]pon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named ... insured ... under a policy or contract executed by the insurer, the trial court ... shall adjudge or decree against the insurer and in favor of the insured ... a reasonable sum as fees or compensation for the insured's ... attorney...." [2] The trial court granted the motion based on the confession of judgment doctrine, concluding that when Omega agreed to pay the claim and tendered the policy benefits, it confessed judgment, thus rendering it liable for fees under the statute.

Omega appeals, contending that it did not wrongfully withhold policy benefits from Johnson because it investigated according to the statutory directives and justifiably relied on the report issued by its engineering firm that sinkhole activity was not the cause of the damage to Johnson's home. Johnson claims that it does not matter whether Omega wrongfully withheld the policy benefits and forced her to file suit. The simple facts asserted by Johnson are that Omega denied her claim, she filed suit, and Omega paid the policy benefits thereafter. Johnson argues that is all she must show to entitle her to fees under the statute. The trial court was persuaded by Johnson's argument and rendered the order awarding fees that we now review. Analyses of section 627.428 and the confession of judgment doctrine reveal that Omega is correct, not Johnson.

**2.** Johnson also sought fees pursuant to section 627.7074(14), Florida Statutes, but apparently withdrew that request.

The courts have consistently held that "[t]he purpose of section 627.428 is to penalize a carrier for wrongfully causing its insured to resort to litigation to resolve a conflict when it was reasonably within the carrier's power to do so." *Gov't Emps. Ins. Co. v. Battaglia*, 503 So.2d 358, 360 (Fla. 5th DCA 1987); *see also Pawtucket Mut. Ins. Co. v. Manganelli*, 3 So.3d 421, 423 (Fla. 4th DCA), *review denied*, 23 So.3d 712 (Fla.2009); *Liberty Nat'l Life Ins. Co. v. Bailey ex rel. Bailey*, 944 So.2d 1028, 1030 (Fla. 2d DCA 2006) (holding that the statute is a penalty in derogation of the common law and stating that "the denial of an insurance claim based on erroneous information provided by the insured does not rise to the level of wrongful conduct necessary to impose a fee award against the insurer"); *Bassette v. Standard Fire Ins. Co.*, 803 So.2d 744, 746 (Fla. 2d DCA 2001) (stating that the purpose of section 627.428 "is to penalize an insurance company for wrongfully causing its insured to resort to litigation in order to resolve a conflict with its insurer when it was within the company's power to resolve"); *Leaf v. State Farm Mut. Auto. Ins. Co.*, 544 So.2d 1049 (Fla. 4th DCA 1989); *Time Ins. Co. v. Arnold*, 319 So.2d 638, 640 (Fla. 1st DCA 1975) (holding that refusal to pay was not wrongful; Time had no obligation to doubt erroneous information contained in the notice of claim, so it was error to award attorney's fees against it). Thus, the statute was enacted "to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." *Ins. Co. of N. Am. v. Lexow*, 602 So.2d 528, 531 (Fla.1992); *see also Underwood Anderson & Assocs., Inc. v. Lillo's Italian Rest., Inc.*, 36 So.3d 885, 888 (Fla. 1st DCA 2010) (holding that the statute encourages the payment of valid claims and, "failing that,

to compensate insureds that are forced to litigate their contracts with improperly recalcitrant insurance companies"); *Travelers Indem. Ins. Co. of Ill. v. Meadows MRI, LLP*, 900 So.2d 676, 679 (Fla. 4th DCA 2005).

But the statute requires that fees may be awarded "upon rendition of a judgment or decree by any of the courts of this state," and a tender of policy benefits or a settlement agreement is not a judgment or decree rendered by a court. *See Wollard v. Lloyd's & Cos. of Lloyd's*, 439 So.2d 217, 218 (Fla.1983) (explaining that fees are awarded under section 627.428 "'even though technically no judgment for the loss claimed is thereafter entered favorable to the insured.'" (quoting *Cincinnati Ins. Co. v. Palmer*, 297 So.2d 96, 99 (Fla. 4th DCA 1974))). In these instances, the courts apply the confession of judgment doctrine, which provides that the tender of policy benefits or a settlement agreement is "the functional equivalent of a confession of judgment or a verdict in favor of the insured" that can be utilized as the basis of an award under the statute. *Id.* at 218; *see also Tampa Chiropractic Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 141 So.3d 1256 (Fla. 5th DCA 2014); *Basik Exps. & Imps., Inc. v. Preferred Nat'l Ins. Co.*, 911 So.2d 291, 293 (Fla. 4th DCA 2005). As this court explained in *Tampa Chiropractic*, "'By using the legal fiction of a "confession of judgment," our supreme court extended the statute's application' to cases in which the insurer settles or pays a disputed claim before rendition of judgment." *Tampa Chiropractic*, 141 So.3d at 1258 (quoting *Basik*, 911 So.2d at 293).

Because "[t]he confession of judgment doctrine turns on the policy underlying section 627.428," *State Farm Fla. Ins. Co. v. Lorenzo*, 969 So.2d 393, 397 (Fla. 5th DCA 2007), the courts have explained that, like the statute, the doctrine is "intended

to penalize insurance companies for 'wrongfully' causing an insured to resort to litigation." *Colella*, 95 So.3d at 896 (citing *Clifton v. United Cas. Ins. Co. of Am.*, 31 So.3d 826, 829 (Fla. 2d DCA), *review denied*, 49 So.3d 746 (Fla.2010)). This court has consistently held that wrongful or unreasonable denial of benefits that forces the insured to file suit is necessary to apply the doctrine and award fees under the statute. *Tampa Chiropractic*, 141 So.3d at 1258. ("For the confession of judgment doctrine to apply, the insurer must have unreasonably withheld payment under the policy or engaged in some other wrongful behavior that forced the insured to sue." (citations omitted)); *Lorenzo*.[3] In *Lorenzo*, this court specifically rejected the rationale advanced by Johnson that filing suit and obtaining a settlement or tender of policy benefits is all that is necessary, and explained:

> Plaintiff ... cite[s] [cases applying the confession of judgment doctrine] for the proposition that the Court [must] ... award fees whenever a Plaintiff sues an insurer and money is later paid. The Court declines to read the statute so broadly.... If Plaintiff were correct, then it would behoove every policyholder to sue whenever a claim is contemplated, because, ... whether the claim is eventually adjusted downward or paid in full, attorney's fees would automatically result. This ... would be contrary to the stated purpose of the statute: discouraging lawsuits and encouraging timely payments of claims. If the insurer knows it will eventually have to pay attorney's fees regardless, it loses the incentive to pay the claim timely, and this would raise the likelihood that the claim will be contested. Moreover, there is a fundamental due process concern in finding that an insurance company which appropriately pays a valid claim according to the Policy terms must still pay attorney's fees, because a claimant sued it to do what it was already in the process of doing .... [T]his statute ... ha[s] consistently been interpreted to authorize recovery of attorney's fees from an insurer only when the insurer has wrongfully withheld payment of the proceeds of the policy.

*Lorenzo*, 969 So.2d at 398 (footnote omitted) (citations omitted) (quoting *Tristar Lodging, Inc. v. Arch Speciality Ins. Co.*, 434 F.Supp.2d 1286, 1297–98 (M.D.Fla. 2006)).

After Omega received Johnson's claim for policy benefits, it complied with its statutory obligations by commissioning a professional engineer to identify the cause of loss and issue a report. § 627.707(2), Fla. Stat. (2009). As previously indicated, such reports are presumed correct. *Id.* § 627.7073(1)(c). This presumption is not

---

**3.** Other courts are in accord. *See Vivas v. State Farm Fla. Ins. Co.*, 138 So.3d 479, 479 (Fla. 3d DCA 2014) ("Because we agree with the trial court that the insurer did not wrongfully cause the insureds to resort to litigation, we affirm the trial court's denial of attorney's fees and costs."); *Sunshine State Ins. Co. v. Davide*, 117 So.3d 1142, 1145 n. 4 (Fla. 3d DCA 2013) ("The first issue in such an award is whether or not the insurer wrongfully caused its insured to have to resort to litigation in order to resolve a conflict with the insurer, when it is within the insurer's power to resolve it. This is the first question that needs to be addressed in any section 627.428 issue." (citation omitted)); *Beverly v. State Farm Fla. Ins. Co.*, 50 So.3d 628, 633 (Fla. 2d DCA 2010) ("This trilogy establishes that an insurer's post-suit payment of additional policy proceeds entitles the insured to section 627.428 attorney's fees where the insurer 'wrongfully caus[ed] its insured to resort to litigation in order to resolve a conflict with its insurer when it was within the company's power to resolve it.'" (quoting *Clifton*, 31 So.3d at 829)), *review denied*, 68 So.3d 235 (Fla.2011).

an evidentiary presumption, but a pre-trial "vanishing" presumption requiring the production of some countervailing evidence. *Warfel v. Universal Ins. Co. of N. Am.*, 36 So.3d 136, 139 (Fla. 2d DCA 2010) (*"Warfel I"*). "[T]he presumption of correctness attached to the [professional engineer's or geologist's] report appears to be aimed at shielding the . . . insurance companies from claims of improper denials of claims." *Warfel II*, 82 So.3d at 57. Although this presumption may not completely insulate an insurer from claims, compliance with the statutes governing the investigation process "goes a long way toward fulfilling [the insurer's] obligations under its contract." *Colella*, 95 So.3d at 895.

When Omega received the report, it sent a copy to Johnson stating that it was denying her claim. At this point, Omega had the right to presume the report was correct and to deny the claim based thereon. After Johnson received the report that she had commissioned, rather than present her countervailing evidence to Omega to rebut the presumption or at least notify Omega that she disagreed with Omega's report and attempt to further discuss her claim, Johnson kept her report to herself and, approximately a year after receipt of Omega's initial report and denial letter, filed suit alleging that Omega breached the policy. Omega then opted to pursue the neutral evaluation procedure, and when the neutral evaluator rendered his report concluding that the damage was caused by sinkhole activity, Omega paid the claim.[4]

We do not believe that, under the facts and circumstances of this case, Omega's actions in investigating and handling Johnson's claim pursuant to the pertinent statutory provisions contained in chapter 627, and in relying on the presumptively correct report it commissioned to deny the claim, establish a wrongful or unreasonable denial of benefits that forced Johnson to file suit to obtain her policy benefits. We, therefore, conclude that application of the confession of judgment doctrine as a basis to award fees under section 627.428 was error. In a case with strikingly similar facts, the court in *Colella* similarly held that application of the confession of judgment doctrine was inappropriate and that the summary judgment for the insured in her breach of contract action against her insurer must be reversed because there was nothing in the record to establish that the insurer, which had complied with the statutory investigation procedures and subsequently paid the claim, wrongfully caused the insured to resort to litigation. Accordingly, we reverse the order under review.

REVERSED and REMANDED.

EVANDER and BERGER, JJ., concur.

---

4. Although participation in the neutral evaluation process is mandatory once a party elects that process, the recommendation of the neutral evaluator is not binding on any party. *See* § 627.7074(13), Fla. Stat. (2009). In 2011, the Legislature amended section 627.7074 to provide that if the insurer agrees to comply with the neutral evaluation recommendation, but the insured does not, "[t]he actions of the insurer are not a confession of judgment or admission of liability, and the insurer is not liable for attorney's fees under s. 627.428 . . . unless the policyholder obtains a judgment that is more favorable than the recommendation of the neutral evaluator." § 627.7074(15)(b), Fla. Stat. (2011).