DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PEOPLE'S TRUST INSURANCE COMPANY,**
Appellant,

v.

**VINCENT FARINATO** and **BERNADETTE FARINATO,**
Appellees.

No. 4D20-866

[April 7, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. CACE18-24427(09).

Joshua S. Beck of Beck Law, P.A., Boca Raton, and Brett R. Frankel, Jonathan Sabghir, and Robert B. Gertzman of People's Trust Insurance Company, Deerfield Beach, for appellant.

David B. Pakula of David B. Pakula, P.A., Pembroke Pines, and Cecere Santana, P.A., Plantation, for appellees.

GROSS, J.

People's Trust Insurance Company appeals a final judgment on attorney's fees and costs entered in favor of the insureds, Vincent and Bernadette Farinato. We reverse the final judgment, concluding that the filing of a lawsuit was not a necessary catalyst to resolve the dispute.

On September 10, 2017, the insureds' home sustained damage as a result of Hurricane Irma. Their home was insured under a homeowners' policy issued by People's Trust.

On August 2, 2018, the insureds, through their public adjuster, reported the claim to People's Trust. Five days later, People's Trust requested a Sworn Proof of Loss from the insureds and advised them that a claims adjuster would be inspecting the property.

On September 6, 2018, before receiving a Sworn Proof of Loss, People's Trust sent the insureds a letter advising them the policy provided coverage

for damages to the interior of the home, but that the damage to the roof "stemmed from age-related wear and tear" and was "excluded from coverage under your policy." Further, because the company's estimate of the damages was under $1,300, well below the policy deductible of $7,779.00, People's Trust told the insureds that repairs would not commence nor would payment be made at that time. The letter noted that if the insureds disagreed with People's Trust's assessment of the scope of repairs, People's Trust was requesting that the insureds provide a Sworn Proof of Loss within 60 days. Finally, the letter noted that the policy provided an appraisal mechanism for resolving any disagreement over the cost and scope of repairs, and that if the appraisal process determined that the insureds' damages did exceed the deductible amount, People's Trust would exercise its option to proceed with repairs at that time using its preferred contractor.

On October 10, 2018, the insureds' newly-retained counsel sent People's Trust a letter of representation and a Sworn Proof of Loss in the amount of $35,456.83, along with an estimate that included damages to the roof.

On October 15, 2018, at 11:01 a.m., People's Trust emailed an appraisal demand letter to the insureds' counsel. The letter stated that People's Trust disputed "the scope of loss and/or the amount of damages identified in your Sworn Proof of Loss," and that "your Sworn Proof of Loss is predicated upon a repair estimate which includes repairs that fall outside the scope of your loss." People's Trust demanded an "appraisal of the amount of loss and scope of repairs" in accordance with the terms of the policy. Finally, the letter contained a boilerplate reservation of rights under "the policy's express terms, conditions, endorsements, limitations and exclusions relating to coverage."

On October 15, at 1:32 p.m., the insureds filed a complaint against People's Trust for breach of the insurance contract, alleging that People's Trust "failed to pay the requested amounts for repairs and/or replacement" pursuant to the terms of the policy. The insureds further alleged that they were entitled to attorney's fees and costs because People's Trust's "failure to timely pay said claim caused [them] to retain the services of the undersigned counsel to represent [them] in this action."

Shortly after the insureds filed suit, People's Trust moved to compel appraisal, asserting that it had "acknowledged insurance coverage for the [insureds'] claim" and that "the only dispute between the parties concerns the amount of loss and scope of repairs." In its motion, People's Trust also requested that the trial court (1) compel its right to repair the insureds'

2

property in accordance with the eventual appraisal award, and (2) compel the insureds to pay the applicable hurricane deductible. The trial court granted the motion and compelled appraisal, repairs, and payment of the deductible.

Subsequently, an appraisal award was entered in the amount of $35,819.98, which included the cost of repairing the roof. The insureds moved to confirm the appraisal award, but the trial court never ruled on the motion. People's Trust's preferred contractor ultimately repaired the insureds' property in accordance with the appraisal award.

Meanwhile, the insureds moved for an award of attorney's fees, alleging that the lawsuit was necessitated by People's Trust's failure to satisfy its obligations under the policy and that the post-suit payment of the claim operated as a confession of judgment.

People's Trust opposed the motion for attorney's fees, arguing that it had demanded appraisal prior to the insureds filing the lawsuit and within days of being placed on notice of a dispute over the scope of loss.

At the hearing on entitlement, the insureds' counsel argued that they were entitled to fees because People's Trust denied coverage for the roof before counsel got involved in the case. The trial court found that the insureds were entitled to fees, reasoning that counsel's involvement had gotten "the wheels turned" on the claim after People's Trust had denied coverage of the roof.

The trial court granted the insureds' motion for attorney's fees and costs and later entered a final judgment for $12,000 in fees and costs.

### *The Dispute Over the Cause of Damage to the Roof was a Question for the Appraisers*

We first address the question of whether the dispute over the cause of damage to the roof was a coverage question for the court or an amount-of-loss question for the appraisers.

"[C]ausation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed." *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1022 (Fla. 2002).

In *People's Trust Insurance Co. v. Tracey*, 251 So. 3d 931, 933 (Fla. 4th DCA 2018), we held that causation was an amount-of-loss issue to be determined by appraisal where the insurer admitted coverage for damage to the interior of the home, but declined to repair the roof. We reasoned that "the insurer did not 'wholly deny' coverage. There is only one claim, and it includes both the roof and the interior of the same home." *Id.*

Here, as in *Tracey*, because People's Trust did not wholly deny the claim, the dispute over the cause of the loss to the insureds' roof was an amount-of-loss issue for the appraisers, not a coverage issue for the court.

This case is distinguishable from *Bryant v. GeoVera Specialty Insurance Co.*, 271 So. 3d 1013 (Fla. 4th DCA 2019). There, we held that a dispute over the application of policy sublimits was a coverage issue that could only be resolved by the court, rather than a dispute over the amount of loss, and thus the insureds "had no right to demand an appraisal under the policy until the coverage issues had been resolved." *Id.* at 1021. Although there is language in *Bryant* to the effect that a partial denial of coverage can suffice to constitute a confession of judgment, *see id.* at 1020, *Bryant* should be limited to its facts—namely, a situation where the insurer invoked coverage defenses to trigger sublimits, and there was no dispute that the amount of loss exceeded the sublimits.

### *The Trial Court Erred in Awarding Fees, Because the Lawsuit was Not a Necessary Catalyst to Resolve the Dispute*

Section 627.428(1), Florida Statutes (2019), states that "[u]pon the rendition of a judgment or decree" against an insurer and in favor of an insured, the insured is entitled to an award of attorney's fees.

"[I]t is well settled that the payment of a previously denied claim following the initiation of an action for recovery, but prior to the issuance of a final judgment, constitutes the functional equivalent of a confession of judgment." *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1215 (Fla. 2016). A confession of judgment occurs "where the insurer has denied benefits the insured was entitled to, forcing the insured to file suit, resulting in the insurer's change of heart and payment before judgment." *State Farm Fla. Ins. Co. v. Lorenzo*, 969 So. 2d 393, 397 (Fla. 5th DCA 2007).

"[W]hen an insured moves for attorney's fees, the underlying issue is whether the suit was filed for a legitimate purpose, and whether the filing acted as a necessary catalyst to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract." *State Farm Fla.*

*Ins. Co. v. Lime Bay Condo., Inc.*, 187 So. 3d 932, 935 (Fla. 4th DCA 2016). However, the confession-of-judgment doctrine should not be applied "where the insureds were not forced to sue to receive benefits," as applying the doctrine in such a circumstance "would encourage unnecessary litigation by rewarding a race to the courthouse for attorney's fees even where the insurer was complying with its obligations under the policy." *Lorenzo*, 969 So. 2d at 398.

"It is only when the claims adjusting process breaks down and the parties are no longer working to resolve the claim within the contract, but are actually taking steps that breach the contract, that the insured may be entitled to an award of fees under section 627.428, Florida Statutes." *Goldman v. United Servs. Auto. Ass'n*, 244 So. 3d 310, 311 (Fla. 4th DCA 2018) (quoting *Hill v. State Farm Fla. Ins. Co.,* 35 So. 3d 956, 960 (Fla. 2d DCA 2010)).

For example, in *Goldman*, this court held that the insureds were not entitled to attorney's fees where they filed suit without informing the insurer that they disputed the amount of payment and thus "never gave the insurer the opportunity to incorrectly deny the benefits before filing a lawsuit." *Id.* at 311–12. In other words, "[t]here was never a breakdown in the claims adjusting or communications process, nor was there a refusal to pay the claim." *Id.* at 311. Thus, the insureds were not entitled to attorney's fees, as the action "was merely a preemptive lawsuit intended to obtain attorneys' fees for the usual efforts in negotiating an insurance claim." *Id.* at 312 (quoting *Hill*, 35 So. 3d at 960).

By contrast, "Florida's cases have uniformly held that a section 627.428 attorney's fee award may be appropriate where, following some dispute as to the amount owed by the insurer, the insured files suit and, *thereafter*, the insurer invokes its right to an appraisal and, as a consequence of the appraisal, the insured recovers substantial additional sums." *Lewis v. Universal Prop. & Cas. Ins. Co.*, 13 So. 3d 1079, 1081 (Fla. 4th DCA 2009). Still, "whether suit is filed before or after the invocation of the appraisal process is not determinative of the insured's right to fees; rather, the right to fees turns upon whether the filing of the suit served a legitimate purpose." *Id.* at 1082.

In cases where this court has approved an award of fees to the insured, despite a pre-suit invocation of the appraisal process, the circumstances were "not indicative of an insured who 'raced to the courthouse' or who filed suit simply for the purpose of securing a fee award." *Id.* at 1083.

For example, in *Lewis*, this court held that the insureds were entitled to fees where: (1) for months, the insurer and the insureds exchanged correspondence in which the insurer was refusing to cover the cost of a new roof; (2) over a year after the loss, the insurer was still taking the position that the bulk of the damage to the roof was not covered; (3) the insurer sent the insureds a letter stating that it was closing its file, though the letter advised the insureds of their right to invoke the policy's mediation and appraisal processes; (4) the insureds then invoked their right to mediation, which failed to resolve the dispute; and (5) only after the insureds hired counsel and threatened suit did the insurer invoke appraisal, which resulted in an appraisal award of over $51,000. *Id.* at 1080–83.

Similarly, in *Travelers Indemnity Insurance Co. of Illinois v. Meadows MRI, LLP*, 900 So. 2d 676 (Fla. 4th DCA 2005), we held that the insureds were entitled to attorney's fees where there was an expensive and drawn-out appraisal due to the insurer's disputed valuation of the loss, and the insureds had to file a declaratory judgment action to determine the procedures for conducting the appraisal.

By contrast, in *Federated National Insurance Co. v. Esposito*, 937 So. 2d 199, 200–02 (Fla. 4th DCA 2006), we held that the insured was not entitled to attorney's fees where the insured invoked the appraisal process, the parties corresponded regarding the appraisal, and "[d]espite the progress of the appraisal process," the insured filed a petition to compel appraisal. We explained that "[t]he insurer did not contest coverage, but rather participated in the contractual appraisal process because it could not reach an agreement with the insured over the disputed amount of the insured's claim." *Id.* at 202. Thus, court intervention was not needed. *Id.* at 200.

In this case, the trial court erred in awarding fees. The lawsuit was not a necessary catalyst to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract. While there was a dispute over the roof, there was not a breakdown in the claims-adjusting process before the insureds filed suit. On September 6, 2018, about a month after the insureds reported the loss, People's Trust admitted coverage for the interior but declined to repair the roof, asserting that the damage to the roof was caused by wear and tear. However, in this letter, People's Trust requested a Sworn Proof of Loss within 60 days if the insureds disagreed with its assessment of the scope of repairs, and advised the insureds of their right to an appraisal for resolving any disagreement over the cost and scope of repairs.

6

Importantly, the October 15 letter also indicated that if the appraisal process determined that the insureds' damages exceeded the deductible, People's Trust would repair any damages awarded in the appraisal, which—under *Tracey*—would include the roof. Thus, the disagreement over the roof did not equate to a breakdown in the claims-adjusting process, as the roof would be addressed in an appraisal.

People's Trust never refused to participate in appraisal and never asserted that it would refuse coverage for the roof *even if the roof was awarded in appraisal.* The chronology of events is important. People's Trust demanded an appraisal within just five days of the insureds submitting their Sworn Proof of Loss through newly-retained counsel. While not determinative, it is significant that People's Trust demanded the appraisal prior to the insureds filing suit, even if only by a few hours. The fact that People's Trust's demand for appraisal occurred *after* the insureds retained counsel is insufficient, without more, to entitle them to attorney's fees.

Unlike *Lewis*, which involved protracted intransigence by the insurer, the demand for appraisal in this case occurred early in the claims-adjustment process. And, similar to *Esposito*, People's Trust did not raise a coverage defense that needed to be resolved by the court, but rather sought to participate in the contractual appraisal process to resolve a dispute over the amount of the loss, including whether the damage to the roof was caused by Hurricane Irma.

Whether or not it was coincidental that the insureds filed their lawsuit on the same day People's Trust demanded an appraisal, the insureds' lawsuit was the classic "race to the courthouse" that served no legitimate purpose. There was never a breakdown in the claims-adjusting process that justified the filing of the lawsuit. People's Trust was working to resolve the claim within the contract, and never took any steps to breach the contract. Contrary to the insureds' argument, the coverage position that People's Trust took prior to the lawsuit with respect to the roof was not an anticipatory breach of the contract, as the appraisal process would address the insureds' entire claim, including the roof.

We reverse the final judgment for attorney's fees and remand to the trial court with directions to deny the insureds' motion for attorney's fees.

*Reversed.*

LEVINE, C.J., and ARTAU, J., concur.

7

*     *     *

*Not final until disposition of timely filed motion for rehearing.*