ALTENBERND, Judge.
State Farm Florida Insurance Company appeals a partial final judgment entered pursuant to an order granting a motion for summary judgment in favor of Karen Co-lella on her claim for breach of contract. This lawsuit arises from a sinkhole claim on which State Farm has paid its policy limits with interest. We conclude that the trial court erred in determining that there was no issue of fact and that State Farm, as a matter of law, had breached its contract with Ms. Colella. Accordingly, we reverse and remand for further proceedings.
I. THE SINKHOLE CLAIM, INVESTIGATION, AND RESULTING LAWSUIT
Given that this case is an appeal from a summary judgment, it is surprisingly difficult to provide an accurate explanation of the facts and the proceedings below. The record is approximately 2000 pages in length, but it contains no depositions and little sworn testimony. The appellant’s brief, which was written by the attorney who represented State Farm in the trial court, provides a statement of the case with no citations to the record and a statement of the facts that is argumentative and more a discussion of law than fact. His frustration over the proceedings below is palpable and perhaps understandable, but that emotion has not promoted a detached analysis of the facts and the law in this case.
Ms. Colella owns a home in Pasco County. On September 14, 2006, State Farm issued a one-year homeowner’s insurance policy providing sinkhole coverage on this home. In January 2007, Ms. Colella, with the assistance of a public adjuster, filed a written claim for unspecified damage to her home that “she feels is consistent with sinkhole activity.” In accordance with section 627.707, Florida Statutes (2006), State Farm retained an engineering firm in early February to inspect the home to determine whether it had been damaged by a sinkhole. That firm inspected the home and performed various tests. In June 2007, the engineers provided a lengthy report that concluded: “It is our professional opinion, based on the information generated by this investigation, and by testing conducted in compliance with generally accepted scientific practices and with Chapter 627.7072, that evidence of sinkhole activity is not present at the site of investigation.”
On June 12, 2007, State Farm sent a copy of the report to Ms. Colella’s public adjuster along with a letter stating that, in light of the report, the policy specifically excluded the cause of loss. The letter quoted the relevant language from the insurance policy. It contained a disclosure of the insured’s right to participate in the neutral evaluation program under section 627.7074 and invited the public adjuster to contact either the claims representative or the Florida Department of Financial Services (“the Department”) to learn more *893 about that program. The letter also told the public adjuster to “feel free” to contact the claims representative at a specific telephone number if the adjuster had any questions regarding the claim or the content of the letter. A copy of the letter was provided to Ms. Colella and her State Farm insurance agent.
Apparently, neither the public adjuster nor Ms. Colella responded to this letter. About seventeen months later, on November 5, 2008, an attorney representing Ms. Colella filed a civil remedy notice with the Department and served a copy on State Farm. The notice contained many allegations, but little factual detail. For example, it charged that the engineering firm retained by State Farm “failed to comply with standard geotechnical engineering practices and procedures,” but did not explain or describe any practice or procedure that was not followed in preparation of the lengthy report that appears to be supported by significant testing and inspection.
The civil remedy notice alleged that another engineering firm had prepared a conflicting report on October 16, 2008, for Ms. Colella. That report apparently was not provided to State Farm until it received it as an attachment to the service copy of the complaint filed in this lawsuit.
Ms. Colella filed this lawsuit on November 10, 2008. The complaint alleges breach of contract, claiming “on information and belief’ that State Farm’s engineering firm failed to comply with standard geotechnical engineering practices and that State Farm knew or should have known that Ms. Colella had a claim payable under the policy.
State Farm responded to the lawsuit with a motion to stay pending neutral evaluation. It relied on section 627.7074, which provides that such evaluation is “nonbinding, but mandatory if requested by either party.” See § 627.7074(4). Ms. Colella filed an objection to neutral evaluation and a supplemental objection, claiming that the statute was unconstitutional and otherwise improper.[1]
A request for neutral evaluation is actually made to the Florida Department of Financial Services. See § 627.7074(4). When State Farm filed its request, Ms. Colella’s attorney filed an objection with the Department. It notified the attorney that the evaluation would continue forward and appointed an engineer as a neutral evaluator. Apparently because of the pending objection in the trial court, Ms. Colella’s attorney does not appear to have provided full cooperation to the neutral evaluator in his efforts to examine the property.
The neutral evaluator visited the home on February 5, 2009. His report is in our record, but it is not entirely clear to this court whether we are to treat this document and the other reports in the record as matters in evidence. The report reflects the evaluator’s difficulty in establish *894 ing a meeting time and the failure of Ms. Colella and her attorney to be at the residence at the time of the inspection. It appears to this court that the neutral engineer was unable to gain access to the inside of the home and that he prepared his report from the examination of the exterior and from a review of the two competing engineering reports. Although he concluded that “the pattern of damage is not focused as would be expected for sinkhole activity” and that “the cracking appears to be cosmetic in nature and would be within accepted tolerances for the age of the home,” he was concerned by the “very large discrepancies between the borings performed by [the first engineer] and the [second engineer].” Accordingly, he recommended that “a neutral third party firm be retained to perform additional borings to resolve the discrepancies.” His report is dated March 4, 2009.
When State Farm received this report, it made a unilateral decision to simply pay policy limits on this claim.[2] Its reasons for doing so are not established in the record, but given the amount in controversy, it is likely that it simply decided to forego the time and expense of further testing and litigation. Accordingly, on March 20, 2009, State Farm sent Ms. Colella’s attorney a cover letter with a check for $91,876 payable to Ms. Colella and her mortgage company, representing the full amount of applicable coverage for the loss. It also sent a check for $17,915.48 to the same payees to cover prejudgment interest on the claim. Finally, the letter concludes: “State Farm concedes your entitlement to a reasonable amount of fees and costs. This should resolve all pending issues with the exception of the amount of fees and costs owed.”
Shortly after State Farm sent the letter and checks, Ms. Colella moved for “partial summary judgment,” claiming that the letter and checks were the functional equivalent of “a confession of judgment.” From the record, it does not appear that the trial court ruled on this motion.
In June 2009, Ms. Colella filed a motion to amend her complaint. Count I of the amended complaint appears to be identical to the original complaint. It does not reflect the payments made in March and continues to allege that State Farm has refused to pay the claim.
Count II attempts to allege a claim under Florida’s Unfair Insurance Trade Practices Act, section 626.9541(1), Florida Statutes (2006), and for “bad faith” under section 624.11, Florida Statutes (2006). This count describes the delivery of the checks in March. It alleges that the checks were “unusable” because the mortgage company did not have an interest in all of the proceeds. It further alleges that at Ms. Colella’s request, State Farm reissued checks limiting the mortgage company’s payment to the amount it was owed. Apparently, these checks were negotiated in April 2009.
Count II contains many allegations that are legal conclusions with little factual detail to explain what State Farm did that was improper in the handling of this claim. If Ms. Colella believes that State Farm conspired in some inappropriate fashion with the first engineer to convince that engineer to certify a false report, she does not specifically allege that theory. The most specific allegation is a claim that State Farm improperly sought neutral evaluation when such evaluation was “le- *895 gaily inappropriate and contrary to the best interests of Ms. Colella.”
After the trial court allowed Ms. Colella to file her amended complaint, she again moved for summary judgment as to count one. The trial court granted her motion for summary judgment as to count one. It concluded that:
1. The original denial of the Plaintiffs claim by State Farm was a breach of the contract notwithstanding the statutory presumption of correctness.
2. State Farm’s compliance with the sinkhole statute did not prevent State Farm from being in breach of contract for failure to pay the Plaintiffs claim.
3. State Farm’s later payment of the claim was, in effect, a “confession of judgment.”
State Farm challenges this order.[3]
II.THE RECORD DOES NOT ESTABLISH AN UNDISPUTED BREACH OF CONTRACT
The trial court’s order does not explain how or in what respect State Farm breached its contract of insurance. From the record before this court, it received a sinkhole claim and processed that claim as it was required to do under section 627.707. It obtained the sinkhole report described in section 627.7073. It relied on that report to inform Ms. Colella that the conditions at the house were not damage caused by a sinkhole. Without regard to the nature of any evidentiary presumption that may be given to that report in a trial, for the purposes of processing this claim, the legislature has established that a report prepared in accordance with the statute is “presumed correct.” See § 627.7073(l)(c); see also Warfel, 82 So.3d 47.
During the neutral evaluation authorized by the Department and in light of the inconclusive report of the neutral evaluator, whom the insured had not permitted into her home, State Farm paid an amount that apparently is the full amount owed under the contract and it even agreed to pay attorneys’ fees.
The trial court is probably correct that the statutory presumption of correctness does not insulate State Farm from all claims for breach of contract, but we are at a loss to determine from this record what act the trial court believes constituted a breach of contract under the undisputed facts in this case. Likewise, we are inclined to believe that “compliance with the sinkhole statute” goes a long way toward fulfilling State Farm’s obligations under its contract. The simple fact that State Farm initially sent a letter to its insured declining coverage based on the statutory report and later decided unilaterally to pay the full policy limits during the neutral evaluation does not prove a breach of contract in this context. It is helpful to remember that, from this record, there is nothing to suggest that the report of the first engineer was not entirely accurate. The fact that Ms. Colella’s attorney hired another engineer who reached a conflicting opinion does not mean that the second engineer reached a correct conclusion.
III.THE PAYMENT OF POLICY LIMITS IN THIS CONTEXT DOES NOT CONSTITUTE A CONFESSION OF JUDGMENT
It is not entirely obvious to this court why both parties have decided to *896 fight this issue. They apparently believe that this summary judgment will have an impact on the civil remedies claim in count II that would be detrimental to State Farm. Before the amended complaint was filed, State Farm paid not only the full policy limits with interest,[4] but also it volunteered to pay Ms. Colella’s attorneys’ fees and costs. Thus, the allegation in the amended complaint that State Farm has failed or refused to pay her damages would appear to have been false when that amended complaint was filed. From the record, we do not know what, if any, damages Ms. Colella could recover for this breach of contract that she has not already received from State Farm.
In Clifton v. United Casualty Insurance Co. of America, 31 So.3d 826, 829 (Fla. 2d DCA 2010), review denied, 49 So.3d 746 (Fla.2010), we discussed the confession of judgment rule and explained that it is “not absolute.” We emphasized that the rule is intended to penalize insurance companies for “wrongfully” causing an insured to resort to litigation. Clifton, 31 So.3d at 829. From this record, it is not apparent that Ms. Colella ever was required to “resort” to litigation. She appears to have opted to pursue litigation without ever attempting to discuss the disagreement with the insurance company. Certainly, as an issue for summary judgment, this record does not establish an undisputed factual basis to conclude that State Farm confessed judgment to the initial complaint when it decided to pay this claim in full.
Reversed and remanded.
KELLY and CRENSHAW, JJ., Concur.

. The statutes regulating sinkhole claims were significantly amended in both 2005 and 2006. See Chs. 2005-111, 2006-12, Laws of Fla. In this case, Ms. Colella’s policy was issued in September 2006, a few days before the effective date of the statutes creating neutral evaluation, i.e., October 1, 2006. She made her claim after the effective date. In Warfel v. Universal Insurance Co. of North America, 36 So.3d 136 (Fla. 2d DCA 2010), approved, 82 So.3d 47 (Fla.2012), some aspects of the 2005 law were treated as procedural and applied in a similar situation where the policy was issued before the statutory amendment but the procedures became effective before the claim. In this case, we do not need to decide whether the Department was correct to enforce neutral evaluation as to this claim. We note, however, that Ms. Colella's objections and supplemental objections did not raise the issue of retroactive application of the statutes requiring neutral evaluation.

. A few days before the report issued, State Farm filed a notice withdrawing its motion to stay pending neutral arbitration. From the record, it is unclear why this motion precedes the date of the report and the delivery of the checks.

. Both parties agree that this partial final judgment is appealable. See Fla. R.App. P. 9.110(k). We conclude that the issues related to breach of contract are sufficiently unrelated to the claims for statutory violations to permit us to review this order. See Costin v. Malone, 402 So.2d 1257, 1258 n. 1 (Fla. 1st DCA 1981).

. If the amount paid was less than the amount due under the contract, we cannot ascertain that from this record.