# Supreme Court of Florida

_____

No. SC14-2124
_____

**KATHY JOHNSON,**
Petitioner,

vs.

**OMEGA INSURANCE COMPANY,**
Respondent.

[September 29, 2016]

LEWIS, J.

This case is before the Court to review the decision of the Fifth District Court of Appeal in Omega Insurance Co. v. Johnson, 39 Fla. L. Weekly D1911 (Fla. 5th DCA Sept. 5, 2014), which arose from a claim for insurance benefits by Kathy Johnson, the insured, submitted to Omega, her homeowner's insurance provider. The decision is in conflict with both Universal Insurance Co. of North America v. Warfel, 82 So. 3d 47 (Fla. 2012), and Ivey v. Allstate Insurance Co., 774 So. 2d 679, 683-84 (Fla. 2000). In conflict with our decision in Warfel, the court below improperly applied a presumption of correctness that is limited to an initial process for an investigative report during the litigation proceedings. In

conflict with Ivey, the district court incorrectly interpreted section 627.428, Florida Statutes, which provides for an award of attorney's fees when an insured recovers benefits from an insurer. Therefore, the two issues we address today are (1) consideration of whether the statutory presumption of correctness afforded to an insurer's internal report during the investigation process in the sinkhole statutes extends to later trial proceedings, and (2) whether an insured's recovery of attorney's fees under section 627.428, Florida Statutes, requires that there be bad faith on the part of an insurance company in the denial of a valid claim, or simply an incorrect denial of benefits. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We conclude that the decision below is in conflict with both Warfel and Ivey.

## FACTUAL & PROCEDURAL BACKGROUND

Section 627.428, Florida Statutes, outlines the provision under which an insured may recover attorney's fees incurred as a result of recovering on a valid claim for insurance benefits. See § 627.428, Fla. Stat. (2015). Today we address the interpretation of section 627.428, and we begin with a review of the actual text of the statute:

(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's

- 2 -

or beneficiary's attorney prosecuting the suit in which the recovery is had.

. . . .

(3)  When so awarded, compensation or fees of the attorney shall be included in the judgment or decree rendered in the case.

§ 627.428, Fla. Stat. (2015).[1]  We have consistently explained that the purpose of this statute is to provide an adequate means to afford a level process and make an already financially burdened insured whole again, and to also discourage insurance companies from withholding benefits on valid claims.  See Ivey, 774 So. 2d at 683-84; Bell v. U.S.B. Acquisition Co., Inc., 734 So. 2d 403, 410-11 n.10 (Fla. 1999).  This statutory provision is of significant importance to the citizens of Florida.

Florida law also includes several statutory provisions which specifically address claims for sinkhole damage, commonly referred to as the "sinkhole statutes."  In part, the sinkhole statutes require insurers to provide policyholders the option of paying an additional premium for sinkhole coverage.  § 627.706(1)(b), Fla. Stat. (2015).  In this context, a sinkhole is described as "a landform created by subsidence of soil, sediment, or rock as underlying strata are dissolved by groundwater."  § 627.706(2)(h), Fla. Stat.  Sinkhole "activity" is defined as a "settlement or systematic weakening of the earth supporting the

_____

1.  There has been no change in section 627.428, Florida Statutes, since the year litigation was initiated.

- 3 -

covered building" resulting from "contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids." § 627.706(2)(i), Fla. Stat. An insurer may require an inspection of the property prior to issuing a policy which provides sinkhole coverage benefits. § 627.706(1)(b), Fla. Stat. Upon submission of a claim for sinkhole damage, a professional engineer or geologist selected exclusively by the insurer may examine the property to determine whether a sinkhole loss covered under the insurance policy exists and make recommendations regarding building stabilization and foundation repair. § 627.7072, Fla. Stat. Thereafter, the engineer or geologist exclusively selected by the insurer tenders a report and certification to the insurer and the insured that outlines the analyses, any test methods, damages, and recommendations for repair. § 627.7073(1), Fla. Stat. During this initial claims process, these findings and recommendations by the insurer's experts receive a statutory presumption of correctness. § 627.7073(1)(c), Fla. Stat (2015).

If the insured disputes whether the insurance company's report is correct, the sinkhole statutes also provide for a neutral evaluation procedure. § 627.7074, Fla. Stat. (2015). Neutral evaluation is mandatory if requested by either party, section 627.7074(4), Fla. Stat. (2015), but the insurer bears the cost for the neutral evaluation. § 627.7074(6), Fla. Stat. Court proceedings are stayed pending the completion of any neutral evaluation. § 627.7074(10), Fla. Stat. Once the neutral

evaluation is completed, the neutral evaluator prepares an independent report to address whether there was damage to the insured property caused by sinkhole activity, and an estimated cost for repairs. § 627.7074(12), Fla. Stat. Significantly, the results of the neutral, independent evaluation are not binding in any subsequent legal proceedings. § 627.7074(4), Fla. Stat.

At the time of the events material to this case, Johnson was covered under a homeowner's insurance policy issued by Omega, which included sinkhole coverage. On January 13, 2010, Johnson filed a claim with Omega to recover damages resulting from conditions which Johnson believed to be sinkhole activity. Specifically, Omega was alerted that there were cracks in the walls, as well as separations between the walls and ceilings of the kitchen, dinette, bathrooms, family room, bedrooms, foyer, windows, and garage of Johnson's home. Cracks were additionally found in the closets and floorboards. The extent of the cracking was such that several of the doors inside the home were difficult to open. As a result, Johnson was forced to hire a drywall company to repair the cracks in the drywall and a carpenter to reset the doors. The fireplace and kitchen cabinets were also displaced by separation, and cracks were additionally observed on the exterior walls of the home and driveway. Moreover, in the utility room, a sag was observed along the top of the cabinet that housed Johnson's washing machine and

dryer. As a result, Johnson had been unable to perform routine maintenance on these appliances because the sag prevented these appliances from being moved.

Omega selected and retained Rimkus Consulting Group to perform an initial sinkhole investigation. After performing three Standard Penetration Test borings, Rimkus concluded that there was no sinkhole activity present on Johnson's property. Although Rimkus conceded that the property was damaged, it attributed the damage to causes that were not covered under the policy, such as volumetric changes of clay-based soil underlying the site, concrete shrinkage, and defective construction processes. As the insurance company's initial report, these conclusions received the initial statutory presumption of correctness pursuant to section 627.7073(1)(c). Based on its report, Omega totally denied Johnson's claim for insurance coverage.

Upon receiving the denial of benefits from Omega to cover potentially hundreds of thousands of dollars in damages to her home, Johnson retained the law firm of Corless Barfield Trial Group. Corless Barfield in turn retained a local expert, Bay Area Sinkhole Investigation & Civil Engineering (BASIC), to perform an independent investigation, examination, and report to determine the cause of the damage to Johnson's home. In its report, BASIC noted that the insurance company's report was a very minimal, incomplete investigation with regard to the loss because it failed to perform a particle size analysis. The BASIC engineer

- 6 -

opined that the exclusion of this required analysis rendered "an acceptable evaluation of the laboratory testing results to be questionable." After performing a more extensive investigation, however, BASIC concluded that the damage to Johnson's home was, in fact, due to sinkhole activity.

Johnson also incurred the additional expert fee expense of $15,000 to retain BASIC. With the expenses looming larger and larger, Johnson attempted to save her rapidly dilapidating home and filed a legal action against Omega for breach of contract. In her complaint, Johnson requested the benefits to which she was entitled under her policy, along with the accompanying attorney's fees under section 627.428. During the discovery process, Omega considered the BASIC report, which had found sinkhole damage on Johnson's property. Thereafter, Omega continued to refuse payment and proceeded to request a neutral evaluation process pursuant to section 627.7074. The parties agreed to stay litigation pending the results of the neutral evaluation.

Omega continued to reject the BASIC opinions and failed to pay any policy benefits. Instead, Omega hired WRS Consulting Engineers (WRS) to perform an additional evaluation. Following the WRS investigation, WRS agreed with BASIC that sinkhole activity was present on Johnson's property. Based on the extensive damage observed, the WRS engineer recommended grouting, underpinning, and remediation programs to stabilize the land and home, as well as repairs to the

foundation. The total cost of repairs was estimated to be in excess of $200,000.

After this second adverse report, Omega finally advised Johnson that it would

abide by the WRS evaluation report and provide payment for the damages pursuant

to section 627.707(5)(b). Johnson was additionally advised that payment for the

damages to her property was conditioned upon her executing a contract with a

remediation company. In cooperation with that condition, Johnson entered into a

contract with Foundation Services for building stabilization and foundation repairs.

The cost of these repairs totaled $213,465.

Following Omega's acceptance of the WRS evaluation report and tender of

payment to Johnson, Omega filed an Answer and Affirmative Defenses, in which

Omega finally admitted that: (1) sinkhole damage was covered under the policy;

(2) Johnson had applied for benefits to cover her sinkhole damage; (3) Omega had

denied that claim; (4) sinkhole damage was, in fact, the cause of the damage; and

(5) Johnson was therefore entitled to benefits to cover the damages. Johnson

subsequently filed a motion for confession of judgment and a motion for attorney's

fees, costs, and interest, contending that Omega's admissions amounted to a

confession of judgment. Omega then changed its position and countered that

Johnson had failed to provide adequate notice of the dispute, suggesting that

Johnson was manipulating the dispute. Further, Omega asserted that Johnson was

absolutely required to show that Omega had acted wrongfully or in bad faith to be

eligible for any fees under section 627.428.  Johnson, however, argued that the only facts necessary to recover fees under section 627.428 were those facts which were already admitted by Omega: that Johnson had properly reported sinkhole damage and made a claim for benefits, Omega denied the claim, and Omega ultimately conceded that Johnson was entitled to benefits for sinkhole damage to her home.  In other words, Johnson's position was that a finding of bad faith conduct on Omega's part was <u>not</u> required as a prerequisite to entitle her to an award of statutory attorney's fees.

Before determining the motion for attorney's fees, the trial court scheduled a full hearing.  After hearing the parties' arguments, the trial court rejected Omega's contention that Johnson was abusing Florida law under section 627.428, and determined that the admissions of record constituted a confession of judgment:

> THE COURT:  I can't find that there was a race to the courthouse here or that there was no real dispute.  Of course, there was a real dispute.  The policyholder made a claim, the claim was denied.  They think that their property was damaged.  The insurance company hired somebody of their own choosing, and, based on that, they said, any damage you may have is excluded, and we don't owe you a nickel.  <u>And it wasn't until after suit was brought that it turned out that, yes, we do owe you some money, and they agreed to pay it.  That amounts to a confession of judgment, and you didn't have to race to the courthouse.  There's no indication that you were doing that.</u>

(Emphasis supplied.)  Therefore, the trial court granted Johnson's motion for confession of judgment and attorney's fees, and thereafter entered an order for

- 9 -

Omega to pay attorney's fees, taxable costs, and prejudgment interest to continue to accrue at the statutory interest rate until paid in full.

Omega subsequently sought review in the Fifth District Court of Appeal. From the beginning of its opinion, the district court below framed the issue before it with the presumption that section 627.428 requires some type of bad faith conduct on the part of the insurance company before fees can be awarded. See Johnson, 39 Fla. L. Weekly D1911. More specifically, in addressing that precedent has required a "wrongful" denial of benefits to recover attorney's fees under section 627.428, the district court incorrectly understood "wrongful" in this context to mean that the insurer must have denied the valid claim in bad faith. Id. The court rejected Johnson's contention that bad faith conduct is not relevant to whether an insured is entitled to attorney's fees under application of section 627.428 and the confession of judgment doctrine:

> Johnson claims that it does not matter whether Omega wrongfully withheld the policy benefits and forced her to file suit. The simple facts asserted by Johnson are that Omega denied her claim, she filed suit, and Omega paid the policy benefits thereafter. Johnson argues that is all she must show to entitle her to fees under the statute. The trial court was persuaded by Johnson's argument and rendered the order awarding fees that we now review. Analyses of section 627.428 and the confession of judgment doctrine reveal that Omega is correct, not Johnson.

Id. Relying primarily on State Farm Florida Insurance Co. v. Colella, 95 So. 3d 891 (Fla. 2d DCA 2012), the district court reasoned that the confession of

- 10 -

judgment doctrine is only applicable when the insurance provider wrongfully forces an insured to pursue litigation to obtain proceeds. Johnson, 39 Fla. L. Weekly D1911. The court further stated that Johnson had not rebutted the statutory presumption of correctness afforded to the original report performed by Omega's expert, which failed to find sinkhole activity. Id. Because the district court determined that Omega did not act wrongfully or in bad faith, the court ultimately held that section 627.428 and the confession of judgment doctrine did not apply, and thus reversed the trial court's order granting the attorney's fees and cost award. Id.

This review follows.

## ANALYSIS

### Statutory Presumption of Correctness

This question presents a pure question of law and is, therefore, subject to de novo review. See Jackson-Shaw Co. v. Jacksonville Aviation Auth., 8 So. 3d 1076, 1084-85 (Fla. 2008). The conflict between the case below and Warfel is generated by a misapplication of the statutory presumption of correctness afforded to insurer reports in the initial claims process under the sinkhole statutes, and the separate and independent statutory provision that provides for the award of attorney's fees to insureds who recover benefits when an insurance company has denied benefits due to insureds. Today, we resolve this conflict by separating the

- 11 -

provisions that have been misapplied by the Fifth District and Respondent, Omega. Specifically, because we explicitly held in Warfel that the statutory presumption of correctness described in the sinkhole statutes does not extend to the litigation context, Johnson did not have the burden of separately rebutting that initial presumption to recover attorney's fees under the terms of section 627.428, Florida Statutes, even though all subsequent expert reports refuted the initial insurance company report.

In Warfel, we considered the proper application of an insurance statute in the sinkhole claim context. See 82 So. 3d at 57. The plaintiff in Warfel filed an action for breach of contract after the insurer had denied the claim based on the report of the engineer selected and hired exclusively by the insurance company. Id. at 50. Relevant here, section 627.7073(1)(c) had been amended to provide that the findings and recommendations made by an engineer selected and hired by an insurer during the initial claim investigation process are statutorily presumed correct. Id. at 49-50. Based on this provision, and after the claim for benefits had proceeded into a legal action, the trial court instructed the jury that Warfel had the burden to overcome the statutory presumption of correctness afforded to the insurer's expert report, which was also the reasoning of the court below. Id. at 50-51. The Second District Court of Appeal reversed and remanded for new trial,

reasoning that the Legislature did <u>not</u> intend to create a burden-shifting presumption in section 627.7073(1)(c). <u>Id.</u> at 51. This Court affirmed. <u>Id.</u> at 65.

On appeal, the issue before this Court was whether the presumption of correctness afforded to the insurer-engineer report during the initial claim process in section 627.7073(1)(c) extended to trial proceedings. <u>See id.</u> at 51. There, we examined both the plain language and legislative history of section 627.7073(1)(c). With respect to the plain wording of the statute itself, this Court recognized that when the Legislature intends to incorporate a burden-shifting provision into a statute, overwhelming precedent indicates that it does so explicitly. <u>See id.</u> at 58. However, no such explicit language exists in section 627.7073(1)(c). <u>See id.</u> We thus concluded that to apply such a presumption absent direction in the statute would render section 627.7073(1)(c) unconstitutional. <u>Id.</u> After a review of the legislative history of the statute, the Court likewise concluded that "the legislation is specifically designed to protect the <u>public</u> during the <u>claims process</u>," not the insurance company during litigation. <u>Id.</u> at 62 (emphasis supplied). "If at all," we explained, "the statutory plan is designed to require that insurance companies have expert reports in the [initial] <u>claims process</u> before denying a request for benefits." <u>Id.</u> at 63 (emphasis supplied). Ultimately, we held that the presumption of correctness in section 627.7073(1)(c) is specific and limited to the initial claim adjustment process, and should not be applied to the trial process. <u>Id.</u> at 57-58

- 13 -

("[B]ecause the sinkhole statutes do not apply to the litigation context, the trial court's . . . treatment of this statute as evidentiary in nature in this case was incorrect.").

Notwithstanding our explicit holding in <u>Warfel</u>, the Fifth District in the case below applied the presumption in 627.7073(1)(c) to the litigation between Johnson and Omega. <u>Johnson</u>, 39 Fla. L. Weekly D1911 (footnote omitted). Strangely enough, the Fifth District specifically acknowledged our holding in <u>Warfel</u>. Notably, however, the court below selected the following phrase from <u>Warfel</u> to support its application of the presumption: "[T]he presumption of correctness attached to the [professional engineer's or geologist's] report appears to be aimed at shielding the . . . insurance companies from claims of improper denials of claims." <u>Id.</u> (quoting <u>Warfel</u>, 82 So. 3d at 57). Yet, the court below failed to acknowledge the topic sentence of the same paragraph, where we plainly stated, "<u>Nothing in section 627.7073, the statute in question here, justifies application of that statute to the litigation context.</u>" <u>Warfel</u>, 82 So. 3d at 57 (emphasis supplied).

Given that we <u>explicitly</u> declined to extend the statutory presumption of correctness in the sinkhole statutes to the trial process, it is clear that the court below acted in conflict with our decision in <u>Warfel</u> when it extended the presumption of correctness to the initial insurance company report, which was incorrect, during litigation and placed a burden on Johnson to further rebut it. The

- 14 -

court below and Omega mistakenly blur the lines between the reliance on reports of insurance company experts made during the initial claims process pursuant to the sinkhole statutes and the attorney's fees to which insureds are entitled under section 627.428 when the insured prevails. Consistent with Warfel, we reiterate that the initial claims process in the sinkhole statutes does not supersede or justify an incorrect denial of benefits under section 627.428. We thus hold that the presumption of correctness granted to the insurer's investigative report in section 627.7073(1)(c) of the sinkhole statutes is only applicable to the sinkhole initial claims process, and does not continue to apply during the trial stage. Nor does it preclude an award of attorney's fees under section 627.428 when an insured ultimately prevails by recovering benefits.

### Johnson's Entitlement to Fees

We next address the conflict between the case below and Ivey. Specifically, the reasoning in the case below indicates that there is confusion in the Fifth District as to whether a recovery of attorney's fees under section 627.428, Florida Statutes, requires bad faith or malicious conduct on the part of the insurance carrier as a prerequisite for such an award. Because the precedent in this area of law clearly rejects a bad faith or maliciousness requirement and the court below relied on distinguishable jurisprudence, we decline to construct an additional hurdle of bad faith for insureds to overcome. Therefore, consistent with the opinions of this

- 15 -

Court and others, we make abundantly clear today that in the context of section 627.428, a denial of benefits simply means an incorrect denial.

Generally, the custom in American law is that each party is responsible for his or her own attorney's fees, regardless of the outcome of the action. See State Farm Fire & Cas. Co. v. Palma, 629 So. 2d 830, 832 (Fla. 1993). An exception, however, arises when an agreement of the parties or a statute states otherwise. Id. The Legislature created such a statutory provision in section 627.428, Florida Statutes, which allows insureds who prevail against an insurance company to recover attorney's fees. § 627.428, Fla. Stat. Furthermore, it is well settled that the payment of a previously denied claim following the initiation of an action for recovery, but prior to the issuance of a final judgment, constitutes the functional equivalent of a confession of judgment. See, e.g., Pepper's Steel & Alloys, Inc. v. U.S., 850 So. 2d 462, 465 (Fla. 2003) ("[Section 627.428] clearly provides that attorneys' fees shall be awarded against the insurer when judgment is rendered in favor of an insured. In Florida, the payment of a settlement claim is the functional equivalent of a confession of judgment or a verdict in favor of the insured.") (citation omitted); Ivey, 774 So. 2d at 684-85 ("[W]here an insurer pays policy proceeds after suit has been filed but before judgment has been rendered, the payment of the claim constitutes the functional equivalent of a confession of judgment or verdict in favor of the insured, thereby entitling the insured to

- 16 -

attorney's fees."); Wollard v. Lloyd's & Cos. of Lloyd's, 439 So. 2d 217, 218 (Fla. 1983) ("When the insurance company has agreed to settle a disputed case, it has, in effect, declined to defend its position in the pending suit. Thus, the payment of the claim is, indeed, the functional equivalent of a confession of judgment or a verdict in favor of the insured."); Barreto v. United Servs. Auto. Ass'n, 82 So. 3d 159, 162 (Fla. 4th DCA 2012) ("Here, because the insurer paid the full amounts claimed only after suit was filed, it essentially confessed judgment.") (emphasis supplied); De Leon v. Great Am. Assur. Co., 78 So. 3d 585, 591-92 (Fla. 3d DCA 2011) ("[A]ny success in an action on an insurance policy, let alone the full payment of the asserted claim, requires an award of fees."); Goff v. State Farm Fla. Ins. Co., 999 So. 2d 684, 688 (Fla. 2d DCA 2008) (policyholder was entitled to attorney's fees because the insurer only agreed to grant benefits after the action was filed).

Moreover, we have held that the bad faith or degree of "wrongfulness" of the insurance company is not relevant to a recovery of attorney's fees under section 627.428. See Ivey, 774 So. 2d at 684 (rejecting a bad faith requirement for section 627.428 attorney's fees); Ins. Co. of N. Am. v. Lexow, 602 So. 2d 528, 531 (Fla. 1992) ("[The insurance company's] good faith in bringing this suit is irrelevant. If the dispute is within the scope of section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees.").

The need for fee and cost reimbursement in the realm of insurance litigation is deeply rooted in public policy. Namely, the Legislature recognized that it was essential to "level the playing field" between the economically-advantaged and sophisticated insurance companies and the individual citizen. Ivey, 774 So. 2d at 684. Most assuredly, the average policyholder has neither the finances nor the expertise to single-handedly take on an insurance carrier. Without the funds necessary to compete with an insurance carrier, often a concerned policyholder's only means to take protective action is to hire that expertise in the form of legal counsel. Counsel then have the ability and knowledge to hire an independent engineer or other expert to prepare a report that either confirms or denies the policyholder's view of the cause of damages. For this reason, the Legislature recognized that an insured is not made whole when an insurer simply grants the previously denied benefits without fees. See id. The reality is that once the benefits have been denied and the plaintiff retains counsel to dispute that denial, additional costs that require relief have been incurred. Section 627.428 takes these additional costs into consideration and levels the scales of justice for policyholders by providing that the insurer pay the attorney's fees resulting from incorrectly denied benefits. Without this approach, we would leave the insured to foot the bill not only for attorney's fees, but also for experts to overcome the denial, which would render insurance payments insufficient to cover the loss.

We directly addressed the issue of whether a wrongful denial of benefits in the context of section 627.428 encompasses a requirement of bad faith conduct in Ivey. The insured in Ivey applied for personal injury protection benefits after having been hit by a car that was insured by Allstate Insurance Company. 774 So. 2d at 681. Allstate failed to conduct a proper investigation and only covered one of the two injuries suffered by the insured. Id. The insured thereafter filed an action seeking proper payment for the additional injury, and Allstate subsequently agreed to pay the proceeds. Id. Because Allstate conceded that it had initially denied the benefits in error, the insured then requested attorney's fees pursuant to sections 627.736 and 627.428. Id. The county court denied the fees because, pursuant to section 627.736, the insurance company paid the balance within thirty days of learning it had denied coverage in error. Id. The circuit court, sitting in its appellate capacity, reversed and granted the fees. Id. However, the Third District granted certiorari and reversed the circuit court's grant of fees to the insured because Allstate's failure to pay the entire claim was due to an error in the doctor's bill. Id.

Observing that the Third District was wrong, however, this Court accepted jurisdiction and addressed the burden of insureds under the provisions in section 627.428 and the confession of judgment doctrine. There, we flatly rejected the notion that some type of bad faith or menacing conduct was required for an insurer

to have acted "wrongfully" under section 627.428. <u>Id.</u> at 684. Rather, we clearly set forth that the existence of a dispute between the insurer and the policyholder coupled with a favorable judgment or payment without judgment for the insured is what justifies an award of attorney's fees. <u>Id.</u> In other words, a "wrongful" denial in this context means an incorrect denial, not one made in bad faith. As we said in <u>Ivey</u>, "It is the incorrect denial of benefits, <u>not the presence of some sinister concept of 'wrongfulness,'</u> that generates the basic entitlement to the fees if such denial is incorrect." <u>Id.</u> (emphasis supplied).

Notwithstanding our rejection of the bad faith requirement in <u>Ivey</u>, the court below and Omega continue to assert that Omega must have acted in bad faith or maliciously to allow Johnson to recover fees under section 627.428. This position, however, ignores clear binding legal precedent to the contrary. The language in <u>Ivey</u> makes clear that the insurer's intentions do not factor into a policyholder's recovery of fees; it is the fact that the denial of benefits was ultimately incorrect that triggers the statute. Here, the facts are undisputed that Johnson submitted a claim, Omega denied that claim, Johnson filed an action seeking recovery, and Omega subsequently conceded that it had incorrectly denied the benefits based on an inaccurate report. These facts alone warrant an award of attorney's fees to Johnson under section 627.428.

In avoiding our holding in Ivey, the court below primarily relies on an incorrect interpretation of Colella, 95 So. 3d 891, to support its conclusion that the confession of judgment doctrine should not be applied in this situation. Specifically, the court below and Omega place tremendous weight on the Colella court's statement, "we are inclined to believe that 'compliance with the sinkhole statute' goes a long way toward fulfilling State Farm's obligations under its contract." See Johnson, 39 Fla. L. Weekly D1911 (quoting Colella, 95 So. 3d at 895). In simpler terms, Omega clings to that language and asks us to hold that Omega is sheltered from liability for attorney's fees simply because it performed the minimum investigation required by law before erroneously denying Johnson's claim—despite the fact that subsequent reports confirmed that Omega was wrong in denying the proceeds. However, this holding would not be justified under this Court's prior rulings, or Colella for that matter. The insurance company controls the selection and hiring of its experts.

While the initial facts of Colella may appear similar to those in the current case, a full picture of the events that occurred in Colella separate the case from Johnson's situation here. As in this case, Colella also involved an insured who made a claim for sinkhole damages. 95 So. 3d at 892. The insured was notified by letter that her claim was denied because the investigation performed by the insurer's engineer indicated that sinkhole damage was not present. Id. The insured

- 21 -

did not reply to the letter, and subsequently filed an action.  Id. at 893.  The similarities, however, end there.  Unlike the instant case, Colella was wrought with indications of foul play by the insured.  To begin with, Colella filed a civil remedy notice with multiple allegations, but could not explain or describe the practices and procedures that the insurer failed to perform.  Id. at 893.  Over Collela's objections, State Farm successfully sought a stay of proceedings pending the outcome of a neutral evaluation.  Id.  Colella's counsel refused to cooperate with the neutral evaluator, which rendered the neutral evaluator unable to access the inside of Colella's home.  Id. at 893-94.  Based on the neutral evaluator's limited ability to investigate, he ultimately recommended that a third party be retained to perform additional testing.  Id. at 894.  Rather than hire the additional engineer, State Farm decided to simply pay the insurance proceeds to Colella and sent her a letter conceding her entitlement to benefits.  Id.  At that point, the district court noted that State Farm likely paid the claim to cut its losses and avoid the additional cost and expense of litigating a case with an uncooperative insured.  See id.

The questionable conduct by the insured did not end there.  Following State Farm's payment of the claim, Colella moved for partial summary judgment, contending that the payment of the proceeds and the letter conceding her entitlement to those benefits constituted a confession of judgment.  Id.  She further alleged a claim under section 626.9541(1), Florida Statutes (2006), or Florida's

Unfair Insurance Trade Practice Act, in which wrongfulness or bad faith is an issue. Id. In addition, Colella alleged that State Farm acted in "bad faith" as defined in section 624.11, Florida Statutes (2006). Id. Under these counts, Colella made several unfounded accusations against State Farm, including that it issued unusable checks, conspired with the first engineer to certify a false report, and improperly sought a neutral evaluation. Id. Moreover, in spite of her allegation that State Farm refused to pay her damages, the record revealed that State Farm had in fact offered to pay Colella's attorneys fees and costs prior to the filing of the amended complaint. Id. at 896. Ultimately, the district court concluded that Colella's complaint offered many legal conclusions with little to no factual detail to support them, and thus held there was no breach of contract under these facts. Id.

Although the Colella court expressed that it considered the insurer's compliance with the sinkhole statutes, the full context of the opinion reveals that the court's primary concern was with the questionable actions of the insured, not the insurer. Specifically, the district court's repeated usage of the phrases "under the undisputed facts of this case" and "in this context" to qualify its reasoning indicated that the court was disturbed by the particular facts related to the insured in that case. Indeed, implicit throughout Colella is a concern with allowing an insured who litigates in bad faith to profit from a technicality. However, there is

nothing in <u>Colella</u> to imply that an outcome in favor of the insurance company should apply beyond those facts. We make no such assumption today.

Contrary to the understanding of the court below and Omega, <u>Colella</u> does not support a requirement of bad faith or malicious conduct under section 627.428. The manipulation and foul play by the insured evinced in <u>Colella</u> is simply not present in the case below.

Unlike Colella, Johnson did nothing to indicate that she was acting improperly or in bad faith. In fact, were it not for Johnson's action in obtaining an independent evaluator, she would have been denied hundreds of thousands of dollars in benefits due to an apparently inadequate and incorrect investigation performed by and on behalf of Omega. If anything, Johnson was the one who made steps to correct a wrongful situation. All inspectors here, including an independent expert, had the full cooperation of Johnson and not only performed a full investigation, but admittedly performed a more thorough investigation than that originally performed by the insurance company's expert. Johnson did not present her dispute with frivolous claims; she proceeded with cold, hard facts. We therefore cannot endorse the Fifth District's reasoning that the outcome in <u>Colella</u> is justified in the case at hand.

The court below similarly relies upon several cases in attempt to support its assertion that the "wrongful" denial of a claim required by section 627.428 must be

accompanied by the insurer's bad faith; yet, a review of the facts of these cases also indicate that it was the policyholder's misleading conduct—not the insurer's—that was relevant to an award of attorney's fees. See State Farm Fla. Ins. Co. v. Lorenzo, 969 So. 2d 393, 398 (Fla. 5th DCA 2007); Liberty Nat. Life Ins. Co. v. Bailey ex rel. Bailey, 944 So. 2d 1028, 1029-30 (Fla. 2d DCA 2006); Gov't Emps. Ins. Co. v. Battaglia, 503 So. 2d 358, 360-61 (Fla. 5th DCA 1987).

As we have discussed, the overwhelming case law on the subject dictates that both Omega and the court below were incorrect on the question of attorney's fees. Once an insurer has incorrectly denied benefits and the policyholder files an action in dispute of that denial, the insurer cannot then abandon its position without repercussion. To allow the insurer to backtrack after the legal action has been filed without consequence would "essentially eliminate the insurer's burden of investigating a claim." Ivey, 774 So. 2d at 684. We therefore disagree with the hypothetical reasoning in Clifton v. United Casualty Insurance Co. of America, 31 So. 3d 826 (Fla. 2d DCA 2010), and disapprove of the suggestion that section 627.428 requires a finding of bad faith on the part of the insurance company.[2]

_____

2. Since the issuance of the decision below, the Fifth District has similarly denied attorney's fees to a claimant who was originally denied coverage by his insurer, but received benefits after filing suit. Explorer Ins. Co. v. Cajusma, et. al., No. 5D14-2608, 2015 WL 6757612 (Fla. 5th DCA Nov. 6, 2015). Like the decision below, the denial in Cajusma contradicts well-established insurance

In sum, the law is clear. Section 627.428 provides that an incorrect denial of benefits, followed by a judgment or its equivalent of payment in favor of the insured, is sufficient for an insured to recover attorney's fees. Extensive case law further provides that an insurer's concession that the insured was entitled to benefits after a legal action has been initiated is the functional equivalent of a confession of judgment. Here, it is undisputed that Omega did not admit its error in denying benefits until after Johnson filed the action. Thus, there is no question that Johnson is entitled to attorney's fees in this situation.

We cannot, as the court below held and Omega requests here, discourage insureds from seeking to correct the incorrect denials of valid claims and allow insurers to deny benefits to which insureds are entitled without ramifications. Johnson proceeded with the only action that a non-expert claimant in conflict with a major insurance company could take: she retained counsel and thus obtained access to an independent expert. After performing a more thorough investigation than that of the insurance carrier, the independent expert <u>did</u> find sinkhole damage and confirmed that Johnson was right. These findings led to the hiring of a neutral evaluator, who also performed a more thorough investigation than Omega's initial evaluator, and ultimately confirmed that Johnson's claim for sinkhole damage was

---

jurisprudence, and we thus disapprove of it to the extent that it conflicts with this opinion.

incorrectly denied.  We will not punish Johnson for actively seeking a solution to the immense financial burden placed on her and the very real property damage to her home.  Thus, consistent with our decision in <u>Ivey</u>, we hold that a recovery for attorney's fees under section 627.428 requires an <u>incorrect</u> denial of benefits by the insurance company, not a bad faith denial.

## CONCLUSION

In light of the express and direct conflict between the decision below and our decisions in <u>Warfel</u> and <u>Ivey</u>, we quash the decision below and remand to the trial court for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, and PERRY, JJ., concur.
POLSTON, J., concurs in result.
CANADY, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Because I conclude that the decision of the Fifth District in <u>Omega Insurance Co. v. Johnson</u>, 39 Fla. L. Weekly D1911 (Fla. 5th DCA Sept. 5, 2014), does not expressly and directly conflict with the decisions of this Court in <u>Universal Insurance Co. of North America v. Warfel</u>, 82 So. 3d 47 (Fla. 2012), or <u>Ivey v. Allstate Insurance Co.</u>, 774 So. 2d 679 (Fla. 2000), I would dismiss this

case for lack of jurisdiction under article V, section 3(b)(3) of the Florida Constitution.

Johnson and Warfel both deal with the same statutory presumption, but they address the application of that presumption in different contexts. In Johnson, the Fifth District addressed "whether Omega wrongfully withheld policy benefits to its insured, Kathy Johnson, after she filed a claim for sinkhole damage under the policy Omega issued to her, thereby forcing her to file suit to collect her policy benefits." Johnson, 39 Fla. L. Weekly D1911. The Fifth District considered Omega's actions under the detailed statutory process for investigating and obtaining a neutral evaluation of sinkhole claims. The court held that the statutory presumption of correctness in section 627.7073(1)(c), Florida Statutes (2009), applied in circumstances that occurred before any trial proceedings were conducted, and held that "application of the confession of judgment doctrine as a basis to award fees under section 627.428 was error." Id. The court also recognized that "[t]his presumption is not an evidentiary presumption, but a pre-trial 'vanishing' presumption requiring the production of some countervailing evidence." Id. (citation omitted).

Warfel—in contrast to Johnson—considered the insurer's assertion of the statutory presumption at trial. We held in Warfel that "because the sinkhole statutes do not apply to the litigation context, the trial court's application of section

- 28 -

90.304 to section 627.7073(1)(c) and the treatment of this statute as evidentiary in nature in this case was incorrect." Warfel, 82 So. 3d at 57-58. We further stated that "[t]he presumption applies to the initial claim process and investigation that insurance companies are required to follow in accepting or denying claims." Id. at 58.

Warfel thus concluded that the statutory presumption does not apply at trial, but Johnson did not apply the presumption in the context of trial proceedings. Rather, in determining whether Omega's conduct forced Johnson to file suit, Johnson applied the presumption to "the initial claim process and investigation," which Warfel expressly recognized is the proper context for application of the presumption. Warfel does not suggest that the statutory neutral evaluation process is excluded from the pre-litigation context in which the presumption is applicable. Nothing in Warfel addresses the application of the confession of judgment doctrine as a basis to award fees under section 627.428. And both cases are in agreement that the presumption is not an evidentiary presumption. Warfel thus provides no basis for the Court to exercise conflict jurisdiction over Johnson.

Nor does Johnson expressly and directly conflict with Ivey. The two cases deal with dissimilar statutory schemes. As explained previously, Johnson addressed whether Omega wrongfully withheld sinkhole policy benefits due to Johnson and thereby forced her to file suit to collect her policy benefits, and the

Fifth District held that application of the confession of judgment doctrine as a basis to award fees under section 627.428 was error in the context of the statutory process established for the investigation and neutral evaluation of sinkhole claims. Johnson, 39 Fla. L. Weekly D1911.

In contrast, this Court in Ivey addressed the insurer's burden of investigating and paying a claim under the requirements of Florida's no-fault insurance scheme—specifically, the requirement to pay benefits within thirty days after receipt of notice of the claim—in conjunction with section 627.428. Ivey, 774 So. 2d at 684. We held that

> under PIP law, the focus is outcome-oriented. If a dispute arises between an insurer and an insured, and judgment is entered in favor of the insured, he or she is entitled to attorney's fees. It is the incorrect denial of benefits, not the presence of some sinister concept of "wrongfulness," that generates the basic entitlement to the fees if such denial is incorrect.

Id. Ivey concluded that the "wrongfulness" of an insurer's denial of a PIP claim is irrelevant when determining whether an insured is entitled to attorney's fees under section 627.428. Id. In contrast, Johnson concluded that in the context of the specific statutory process established for the investigation and neutral evaluation of sinkhole claims that the wrongfulness or unreasonableness of an insurer's denial of a sinkhole claim is relevant when determining whether an insured is entitled to attorney's fees under section 627.428. Although Ivey held that the insurer's "payment after suit was filed operates as a confession of judgment," nothing in

- 30 -

<u>Ivey</u> suggests that its holding should be extended beyond the context of the PIP statute. <u>Id.</u> at 684. There is no express and direct conflict with <u>Johnson</u>.

This Court lacks jurisdiction under the Florida Constitution to review <u>Johnson</u>. Accordingly, I dissent.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

     Fifth District - Case No. 5D13-1701

     (Marion County)

Timothy Wayne Weber and Joseph Patrick Kenny of Weber, Crabb & Wein, P.A., Saint Petersburg, Florida; and Morgan Barfield of Corless Barfield Trial Group, Tampa, Florida,

     for Petitioner

Anthony John Russo and Ezequiel Lugo of Butler Weihmuller Katz Craig LLP, Tampa, Florida,

     for Respondent